Fleckenstein Bros.' Co. *v.* Fleckenstein.

---

FLECKENSTEIN BROTHERS' COMPANY

*v.*

EDWARD FLECKENSTEIN et al.

[Filed April 20th, 1904.]

1. A covenant, on the sale of a business and good will, not to engage in the same business, does not bind the covenantor's wife or prevent her from using her own name in a similar business established by her, though such use injures the good will of the purchaser of the husband's business.

2. In a suit for an injunction, evidence *held* to show that defendant was engaged directly, as agent, in carrying on a business, in violation of his covenant not to engage "as agent or servant" in such business.

3. One who has sold his business and good will, and has covenanted not to engage as agent or servant in that business, may not, although he is not engaged in any way in the prohibited business, hold himself out to the world as the manager or superintendent of a similar business carried on under his wife's name, as one giving to that business the benefit of his special skill and personal attention, and thereby attract to it the good will which he has sold.

Fleckenstein Bros.' Co. *v.* Fleckenstein.

4. Where a proprietor of a business has sold the same, and has covenanted not to engage in that business as agent or servant, strangers to the contract, who establish a similar business under the name of the wife of the covenantor, may be enjoined, at the instance of the purchaser of the business, from causing the covenantor to violate the contract by employing him, and holding him out as their active agent and superintendent, with knowledge that the purchaser is thereby being injured and obtaining a corresponding advantage to themselves in their business.

On bill, supplemental bill, &c.   On motion to settle decree.

*Mr. Charles W. Fuller* and *Mr. George T. Werts,* for the complainant.

*Mr. James A. Gordon,* for the defendants.

STEVENSON, V. C.   .

Upon the settlement of the decree in this cause elaborate arguments were made in regard to the scope of the injunction to be issued against the defendants, Rosina E. Fleckenstein and Nicklaus Kerber, a matter which was expressly reserved in the announcement of my conclusions.   .

I shall undertake to consider only the most important of the many questions which were discussed in this argument.

1. On behalf of the complainant it was urged that the business which these defendants were carrying on under the name of R. E. Fleckenstein & Co. was in fact the business of Edward Fleckenstein, who was using them and their name as a mere cover, and that therefore the business should be suppressed by an injunction, although it was conceded that Mrs. Fleckenstein and Mr. Kerber might lawfully set up and carry on an honest business of their own at any time.   .

The evidence, in my opinion, does not sustain the charge that this business is in fact the business of Edward Fleckenstein, and if it did, an injunction falls upon persons, not upon property or business.   If the situation in fact is such as the complainant claims, the injunction which will issue in this case will effectively deal with it, as will appear in the sequel.

2. Mrs. Fleckenstein has a right to use her own name, which apparently is a thing of value in the bologna business in Hudson, Union and Essex counties. By using her own name she may injure the business of the complainant far more than if she adopted some other name. Still she is not bound by any covenant, and so far as the use of her name injures the good will of the complainant and thus causes more damage than would accrue merely from the same competitive business not carried on under the Fleckenstein name, the complainant is without remedy.

*Smith* v. *Hancock* [*1894*], *2 Ch. 377,* illustrates how in cases of these restrictive covenants a wife may with impunity impair the good will which her husband has sold and for which he has been paid a substantial sum. Lord-Justice Lindley (at *p. 385*) says that "no honorable man would have done" what the defendant (the husband) was proved to have done, and that "no honorable man would, if he could help it, allow his wife to do what she has done and is doing." Yet the conclusion was reached that there should be no injunction against the husband, who was the sole defendant, because his covenant not to "carry on, or be in anywise interested in" a business similar to that of the complainant could not be construed as including voluntary services rendered by him to his wife in her similar business carried on by her under her name, *i. e.,* her husband's name with "Mrs." prefixed. The words "carry on" appear to have been held to mean substantially the same thing as the words "conduct as principal," and the word "interested" was held to involve only "pecuniary interest."

No effort was made to enjoin the wife. She was in the same situation as Mrs. Fleckenstein, *i. e.,* not bound by any covenant. In each case, excluding the charge against the husband for breach of covenant from all consideration, there is no foundation for any charge against the wife of unfair competition. The defendants, Rosina E. Fleckenstein and Nicklaus Kerber, are not charged with palming off their goods as the goods of the complainant, to the injury of the complainant and in fraud of the public. On the contrary, the charge against these two

defendants is that the public are induced intentionally to buy their goods in preference to the complainant's goods. If the defendant Edward·Fleckenstein were not tainting this business of his wife and brother-in-law by his breach of covenant, it seems plain that the wife and brother-in-law would have an undisputed right to continue their business as they are now carrying it on, notwithstanding they might attract all the customers of the complainant by appearing practically as the successors to this famous sausage maker. The same result might follow if Mr. Fleckenstein's son should come out in his own name and prosecute the business, which he had learned from his father, and thus attract his father's old customers. Thus the father might receive a large sum of money for the good will of a business protected by his covenant and immediately thereafter the son might destroy this protection and, in effect, appropriate the good will which the father had sold.

The conduct of a wife or a son in destroying or appropriating a good will which a husband or father has sold may be morally justifiable or morally reprehensible according to circumstances. A purchaser takes the risk when he purchases the good will of a business protected by one of these covenants that after all the covenant may prove to have little or no protective value. As long as he enjoys the full protection which honest observance of the covenant can afford, he cannot complain merely because he is disappointed in respect of the adequacy of his protection and finds that he has paid a large sum of money for what turned out to have little value.

3. The complainant also insisted that Mrs. Fleckenstein and Kerber should be enjoined from using the factory where they manufacture their bolognas and carry on their provision business, and further contended that the lease of these premises, made by Mr. Fleckenstein to the new firm, should be canceled and Mr. Fleckenstein should be enjoined from collecting rent for the alleged unlawful use of the demised premises.

I have not held in this case that the fitting up of the factory by Edward Fleckenstein for the bologna and provision business, and letting the same to Mrs. Fleckenstein and Kerber for carry-

ing on that business, considered as a single transaction, can constitute "engaging" in the bologna and provision business either directly or indirectly as principal, agent or servant on the part of Mr. Fleckenstein. See *Bird* v. *Lake, 1 H. & M. 111.*

One cannot properly be said to be "engaged" in a business unless there is, to some extent, a continuous occupation of his faculties and powers directed toward the carrying on of the business as an object or purpose. The extent of continuity implied when the word "engaged" is employed depends upon the thing which "engages." A man may be engaged in prayer, although the engagement may occupy but a few minutes; a man may be engaged in building a house, which cannot occupy in the natural course of things more than a few months. A man also may be engaged in any occupation or pursuit for a limited time.

In addition to some substantial continuity in the conduct or occupation which constitutes engaging in a business, I think, also, that such conduct must have for its *purpose* or *object* the carrying on of that business. The men who supply the pork and beef to this bologna factory are not engaging in the bologna business, although they may be continuously, from day to day and month to month, occupied in supplying the goods without which the bologna business could not be continued. These men are engaged in the business of selling meat, because that is the object or purpose to which they apply their efforts as principals or as agents of others.

It is unnecessary to undertake to define the exact content of this word "engage," or the words "engage in business," if such definition were possible. Whether a man is directly or indirectly engaged as principal or agent in a *business* must be determined, I think, by a comprehensive judgment of his whole conduct taken together; what he has done and what he is doing. In dealing with the conduct of a vendor of the good will of a business with reference to a charge that such vendor had unlawfully injured the good will which he had sold, Lord Herschell says: "It is often impossible to draw the line and yet

Fleckenstein Bros.' Co. v. Fleckenstein.

possible to be perfectly certain that particular acts are on one side of it or the other." *Trego* v. *Hunt* [*1896*], *A. C. 7, 20.*

It is the conduct of the defendant Edward Fleckenstein, as it is disclosed from day to day—his continuous conduct—which may be deemed engaging directly or indirectly, if not as principal certainly as agent, in the bologna business. Perhaps the clearest and safest statement in regard to Edward Fleckenstein's violation of his covenant, as exhibited by the testimony in this cause, is that he is shown to be engaging directly as agent in carrying on this business.

It may be noted here, in passing, that the cases which hold that the phrase "carry on" means "conduct or prosecute as principal," and the cases which hold that the phrase "be interested in" refers to a pecuniary interest in profits, do not apply to this case, where the covenant is not to engage "as agent or servant." *Smith* v. *Hancock* [*1894*], *1 Ch. 209; S. C., on appeal* [*1894*], *2 Ch. 377; Gophir Diamond Co.* v. *Wood* [*1902*], *1 Ch. 950;* see *Jones* v. *Heavens, 4 Ch. D. 636.*

The proofs in this case show that Edward Fleckenstein, after retiring from the bologna and provision business in Jersey City, became eager to enter that business again, and that he proceeded with energy to construct and fit up a large factory with machinery adapted to carrying on this business. He was stopped by the threat of an injunction. He then proceeded to complete the factory and let the same to his wife and brother-in-law, who proposed with his consent, if not by his procurement, to carry on the same business under the Fleckenstein name. He took up his residence above the factory and from day to day employed his time largely in watching the preparations for the business, and then the commencement and prosecution of the same. It was proved to my satisfaction, notwithstanding the contradictory character of a great deal of the testimony, that, from time to time, he acted directly and personally as agent for the firm in the practical operations of the factory and business connected therewith. A part of the business was carried on in his own living-rooms. Although an active man and eager for business, he appears to have abstained from making

17

any effort to "engage" his time and abilities in any other business venture.

It was all of the above circumstances taken together, and, perhaps, some others of less importance, which I do not recall, which led me to the conclusion that the case called for an injunction, the main object of which would be to restrain Edward Fleckenstein from engaging in the bologna or provision business, indirectly or as agent for his wife and brother-in-law, in violation of his covenant; it was not any one particular act of the many proved which was adjudged to be the subject of injunction. I also reached the conclusion that if, as a matter of fact, Edward Fleckenstein had not engaged in any way or in any capacity in the prohibited business, he had no right to hold himself out to the world as the manager or superintendent of this business, as one giving to this business the benefit of his special skill and personal attention, thereby attracting to it the good will which he had sold. Such conduct would be a fraudulent tort in the nature of unfair competition.

A more careful analysis of the nature and extent of the injunction against Edward Fleckenstein was rendered necessary by the extensive argument made on this motion to settle the decree in regard to the nature and extent of the injunction against Rosina E. Fleckenstein and Nicklaus Kerber. Edward Fleckenstein is not enjoined from doing any act in furtherance of the establishment of a business similar to the one which he sold, nor will these other defendants, strangers to the contract, be enjoined from receiving the benefit of every such particular act on the part of Edward Fleckenstein. The injunction upon Rosina E. Fleckenstein and Nicklaus Kerber, who are strangers to the contract, plainly may be confined to conduct which has the effect to give occasion or cause for a violation of covenant by Edward Fleckenstein, which is subject to injunction upon him and by which they profit in their competitive business.

4. The important question remains, what is the principle on which Rosina E. Fleckenstein and Nicklaus Kerber, strangers to this contract, can be interfered with in the prosecution of

their lawful business because of this contract which Edward Fleckenstein made?

It would, I think, be a difficult proposition to maintain that third parties to such a contract as this are liable to an injunction in equity at the suit of the covenantee, restraining them from merely aiding or abetting the covenantor in a violation of his contract. If Edward Fleckenstein openly and honestly undertook to set up the bologna and provision business in Jersey City in his own name, would the complainants be able to enjoin a third party from letting a bologna factory and shop to Edward Fleckenstein for the purposes of his business?

One interesting feature of the situation is that an injunction goes against the covenantor to restrain him from committing a breach of a contract, while the same injunction, in the same suit, goes against a third party, a stranger to the contract, between whom and the complainant there is no privity, to restrain him from the commission of a tort, which tort consists in *causing* the covenantor to violate his contract. So far as I have observed no English case belonging to the class with which we are dealing presents anything more than an injunction upon the party to the contract restraining him from a violation thereof. The leading English case of *Lumley* v. *Gye, 2 El. & B. 216 (1853)*, was an action at law for damages in which the plaintiff was allowed to recover against the defendant for persuading an opera singer to break her contract to sing at his theatre. It would seem that in such a case a suit in equity for an injunction would be maintainable against both this same defendant and the opera singer, but no such English case has been brought to my attention.

Several American cases have been cited which allowed the injunction to go against the contracting party, who was threatening to violate his contract not to compete, and also against a third party, a stranger, who was aiding such violation of contract and profiting thereby, but these cases present no adequate discussion of the principle upon which the scope of the injunction was thus extended.

"The idea of interference with contract relations as a specific tort is of recent origin." *16 Am. & Eng. Encycl. L. 1109.*

See the sections following the above citation where the modern cases are cited and commented upon.

I do not propose in this case to undertake to formulate or act upon any principle wider than one which will cover the exact facts of this case. The defendants, Mrs. Fleckenstein and Nicklaus Kerber, are not merely aiding and abetting Edward Fleckenstein in violating his covenant, they are not merely *causing* such violation with knowledge that the complainants are being thereby injured. They are in my judgment guilty of what may be deemed to be a form of unfair competition, which is a fraudulent tort entirely distinct from conduct, which merely causes someone to break his contract. They are, speaking figuratively, stealing the good will which they know Edward Fleckenstein sold to the complainant's assignors and for which Edward Fleckenstein was paid a price which he retains. They know that Edward Fleckenstein cannot seize, resume possession of this good will, this property which he has sold, without violating his contract. When the defendants cause Edward Fleckenstein to violate his contract—do an illegal act which equity will enjoin—and the direct effects of such illegal act are to give them an advantage in their business and inflict a corresponding disadvantage upon the complainant in its business, I think that they, the defendants, are guilty of conduct which has the essential elements of a fraud. They are certainly making a gain for themselves at the expense of a competitor by causing another party to injure such competitor and thereby subject him to damage through an illegal act. Whether such a tort in every case could be properly classified among frauds or not, in this instance it is accompanied with concealment and false pretense.

The case is in many respects in analogy with *Stone* v. *Goss,* *55 Atl. Rep. 736,* decided by the court of errors and appeals in 1903. The learned judge, who delivered the unanimous opinion of the court in that case, after citing a large number of cases, says (at *p. 737*) : "These cases establish the principle that employes of one having a trade secret, who are under an

express contract, or a contract implied from their confidential relation to their employer, not to disclose that secret, will be enjoined from divulging the same to the injury of their employer whether before or after they have left his employ; and that other persons who induce the employe to disclose the secret, knowing of his contract not to disclose the same, or knowing that his disclosure is in violation of the confidence reposed in him by his employer, will be enjoined from making any use of the information so obtained, although they might have reached the same result independently by their own experiments or efforts.   We approve the principle thus established."

In the above-cited case we have one defendant, enjoined from violating his express contract, which the court found to have been proved by the testimony, and the other defendants, who were strangers to the contract, enjoined from committing a tort which consisted in appropriating to their own use through such violation of contract, caused or induced by them, a trade secret which was valuable to the complainants' business and the possession of which was protected by the contract.

The case of *Stone* v. *Goss* and the case now before this court have one most important feature in common, viz., the defendant, between whom and the complainant there is no privity of contract—the defendant, who stands charged with an equitable tort, is not merely injuring the complainant by causing the breach of a contract between the complainant and a third party, but by causing such breach is acquiring an advantage for himself and is in effect appropriating the property of the complainant.

I have endeavored to frame the final decree in accordance with the views above set forth.