[No. 11262-7-I. Division One. January 31, 1983.]

THE COUNTY OF KING, *on the Relation of Leo M. Sowers, Respondent,* v. KENT D. CHISMAN, ET AL, *Defendants,* NORM RAY ADAMS, *Appellant.*

*Victor V. Hoff,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *C. Craig Parker, Deputy,* for respondent.

DURHAM, A.C.J.—Norm Ray Adams appeals ˏan order

finding him in contempt for violating a preliminary injunction by continuing to operate a topless dancing establishment without a King County license. He also appeals the validity of the preliminary injunction.

In September 1981, Adams began operating the Booby Trap, a soft–drink and topless dancing establishment in unincorporated King County. He started operations before applying for a license as required by former King County Code 6.08. He then applied for a license, but was denied on four grounds: (1) he had been operating without a license; (2) he had a prior conviction;[1] (3) he allowed "table dancing," with dancers less than 6 feet away from the patrons;[2] and (4) he had allowed people under 21 years of age into the Booby Trap.[3] He continued to operate even after the King County Board of Appeals affirmed the denial of his license, and on December 8, 1981 the County moved in superior court for a preliminary injunction. This motion was orally granted on December 18, 1981.

---

[1]King County Code 6.08.027(F) provides:

"No public amusement or entertainment license shall be issued to, maintained or renewed by any person who has:

"1. While unlicensed, committed or aided and abetted the commission of any act for which a license is required under the provisions of this chapter; or

"2. Committed any act resulting in conviction or bail forfeiture of a felony or a crime involving moral turpitude, including but not limited to prostitution; . . ."

[2]King County Code 6.08.027 provides:

"Standards for public amusement/entertainment license issuance. A. No public amusement/entertainment license shall be issued . . . where an employee will not conform and abide by the following requirements for his or her conduct thereon:

". . .

"6. No employee . . . whose breasts and/or buttocks are exposed to view shall perform elsewhere in a public place than upon a stage at least eighteen inches above the immediate floor level and removed at least six feet from the nearest patron."

[3]King County Code 6.08.027(D) provides:

"No public amusement/entertainment license shall be issued, maintained or renewed as set forth in subsection A of this section where activity of any employee shall follow that authorized by subdivision 6 of subsection A of this section unless:

"1. Admission to the public place is restricted to persons of the age of twenty–one years or more; . . ."

Later in December, Adams sold his interest in the business to Alexa Work, a dancer at the Booby Trap. In the sale agreement, the imminence of the injunction was specifically mentioned. The agreement gave Adams the option to repurchase the business in 1 year for $1,000. Work could not sell to anyone else in the interim, and she agreed to, in effect, maintain Adams' business practices. The Booby Trap continued operating as before, although Adams did not himself actively participate in running it.

On January 8, 1982 the court entered its order granting preliminary relief. The order prohibited Adams from operating without a license, operating in violation of the topless dancing regulations of section 6.08.027(A), allowing the premises to be used for any business in violation of chapter 6.08, accepting any money from such a business, or aiding in any way another person's acting in a manner prohibited to Adams. The Booby Trap continued to operate as before.

On January 15, the County moved that Adams and others not a party to this appeal be held in contempt. The court found Adams to be in contempt[4] and entered an enforcement order. Pursuant to this order, the Booby Trap was closed on about January 29, 1982. The order provided that Adams could purge the contempt by obtaining a license and operating the Booby Trap in accord with all applicable law.

## PRELIMINARY INJUNCTION

Adams' challenges to the preliminary injunction fall into four categories: (1) The injunction violates the first amendment to the United States Constitution by abridging his freedom of expression, (2) the County's licensing requirements constitute a prior restraint of First Amendment rights, (3) the injunction was overly broad, and (4) the injunction was improper due to failure to prove actual and substantial injury. We shall discuss these in order.

---

[4]Adams had asked for discretionary review in the Court of Appeals of the preliminary injunction. On March 31, 1982 the commissioner granted discretionary review of the contempt proceeding.

### FREEDOM OF EXPRESSION

Adams' arguments are grounded on the contention that topless dancing is protected per se by the First Amendment right of freedom of expression. It is true that dancing does not lose its expressive quality simply because its performance involves nudity. *Schad v. Mount Ephraim,* 452 U.S. 61, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (1981).

Nonetheless, while the communication of a nude dancer may be entitled to First Amendment protection, the nudity itself is not automatically protected. *State v. Baysinger,* 397 N.E.2d 580 (Ind. 1979), *appeal dismissed sub nom. Clark v. Indiana,* 446 U.S. 931, 64 L. Ed. 2d 783, 100 S. Ct. 2146 (1980). It becomes protected activity only on a showing that it contains an expressive element.[5] *See State v. Baysinger, supra; Gabriele v. Old Orchard Beach,* 420 A.2d 252 (Me. 1980); *Major Liquors, Inc. v. Omaha,* 188 Neb. 628, 198 N.W.2d 483 (1972). Nudity, in and of itself, is clearly conduct and has traditionally been subject to the police power of the State, particularly when used as sales promotion in bars and restaurants.[6] *Portland v. Derring-*

---

[5]The record shows that the activities of the table dancers at the Booby Trap included conduct which would be extremely difficult to define as "dancing" and which was arguably obscene. Any protection that dancing might have is lost, of course, if the dancing is found to be obscene. *Commonwealth v. Kŏcinski,* 414 N.E.2d 378 (Mass. App. Ct. 1981); *People v. Better,* 33 Ill. App. 3d 58, 337 N.E.2d 272 (1975).

[6]This case does not involve the serving of liquor and is thus not resolved by the holding of *California v. LaRue,* 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972). The Court in *LaRue* held that under the Twenty–first Amendment the states have greater power to regulate in a way that impinges on arguably protected activity when the regulation is pursuant to their power to control the sale and distribution of liquor. *LaRue* does not address the question of whether topless dancing falls within the "arguably protected" category. *LaRue,* at 112 n.2. Three states have found protection under their state constitutions for activities regulatable under *LaRue. Bellanca v. New York State Liquor Auth.,* 54 N.Y.2d 228, 429 N.E.2d 765, 445 N.Y.S.2d 87 (1981), *cert. denied,* 456 U.S. 1006 (1982); *Mickens v. Kodiak,* 640 P.2d 818 (Alaska 1982); *Commonwealth v. Sees,* 374 Mass. 532, 373 N.E.2d 1151 (1978). But even under such a broad protection, time/place/manner regulations are permissible. *Bellanca v. New York State Liquor Auth., supra.*

*ton,* 253 Or. 289, 451 P.2d 111, *cert. denied,* 396 U.S. 901 (1969). *See also Seattle v. Hinkley,* 83 Wn.2d 205, 517 P.2d 592 (1973).

In *Crownover v. Musick,* 9 Cal. 3d 405, 509 P.2d 497, 107 Cal. Rptr. 681 (1973), *cert. denied,* 415 U.S. 931 (1974), the court considered the constitutionality of ordinances prohibiting topless and bottomless entertainment in restaurants. It ruled that there was no prima facie First Amendment protection for topless dancing. Recognizing that nude conduct can be distinguished from protected communication, the court said:

> It is clear that these provisions of the ordinances are directed at conduct—topless and bottomless exposure— and not at speech or at conduct which is "in essence" speech or "closely akin to speech." A common sense construction . . . of the pertinent provisions is that they proscribe nudity in specified public places. They do not prohibit entertainment but merely enjoin that if the entertainer or performer offers it, he or she must have some clothes on. In a word the ordinances regulate conduct.

*Crownover,* at 425. The court concluded that nude conduct by entertainers in the establishments governed by the ordinances was not "symbolic in the constitutional sense" and upheld the ordinances against a First Amendment challenge. *Crownover,* at 425.

▆ Although we find the conclusion in *Crownover* highly persuasive, we need not resolve the issue of prima facie protection here. The ordinances before us are valid time, place, and manner restrictions of topless dancing, even assuming some degree of constitutional protection. *See Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 49 L. Ed. 2d 310, 96 S. Ct. 2440 (1976).

These ordinances are unlike those overturned in *Schad v. Mount Ephraim, supra,* and *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975) upon which Adams mistakenly relies to find a per se protected right to present topless dancing. The ordinances in both *Schad* and *Doran* were overbroad, prohibiting clearly

expressive activity. In *Schad,* the ordinance prohibited all live entertainment within the borough. Section 6.08.027(A) refers to any place of "public amusement/entertainment," a category broadly defined by section 6.08.005(A).[7] Nonetheless, the requirements of section 6.08.027(A) clearly apply only to nude entertainment. In *Doran,* the ordinance banned all nude entertainment whatever its expressive component. Section 6.08.027(A) does not ban topless dancing, but merely regulates the way in which it is presented. These restrictions do not apply to nudity when part of an "expressive" performance on a theater stage. Section 6.08.027(E).[8] The scope of the activity covered by section 6.08.027 is, therefore, much narrower than that found protected in *Schad* and *Doran.* Thus, even assuming some First Amendment right to present topless dancing, the requirements of section 6.08.027(A) are time, place, and manner restrictions which are reasonably related to the goal of regulating activity which is legitimately perceived as potentially disruptive of the social order, and which provide protections for expressive activity involving nudity.

PRIOR RESTRAINT

Adams also challenges the constitutionality of licensing requirements for operating a topless establishment. He

---

[7]King County Code 6.08.005 provides:

"A. 'Public place of amusement,' 'public amusement/entertainment,' and 'public entertainment' mean an amusement, diversion, entertainment, adult entertainment studio, show, performance, exhibition, display or like activities, for the use or benefit of a member or members of the public, or advertised for the use or benefit of a member of the public, held, conducted, operated or maintained for a profit, direct or indirect."

[8]King County Code 6.08.027(E) provides:

"This section does not apply to:

"1. Taverns and premises maintaining liquor licenses; or

"2. Any theater, concert hall, or similar establishment which is primarily devoted to theatrical performances whereupon there are seats arranged so that a body of spectators has an unobstructed view of the stage for performance of artistic expression and where such performances are not incidental to the promotion of the sale of food and drink and for which a county license is otherwise in full force and effect."

argues that, in general, it is prior restraint to require a license when protected activity is involved, and, specifically, that it is objectionable when the license is conditioned on "good moral character," section 6.08.020,[9] or is automatically denied for past conduct, section 6.08.027(F). *See Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 75 L. Ed. 1357, 51 S. Ct. 625 (1931).

Adams claims that this case is controlled by *Seattle v. Bittner,* 81 Wn.2d 747, 505 P.2d 126 (1973). In *Bittner,* the court struck down a Seattle ordinance which prohibited the issuance of licenses to exhibit motion pictures to anyone who was not of "good moral character" or who had been convicted of a crime of moral turpitude. The court found that exhibition of motion pictures was well established as a protected activity, that the ordinance was not restricted to the nonprotected activity of distributing obscene motion pictures, and that the license requirements were invalid since "the constitution does not permit a licensing agency to deny to any citizen the right to exercise one of his fundamental freedoms on the ground that he has abused that freedom in the past." *Bittner,* at 756.

Even if we were to assume, arguendo, that topless dancing is entitled to the same level of protection as motion picture distribution, we do not agree that *Bittner* is dispositive. Adams' license was not denied solely because of his prior conviction under section 6.08.027(F). He was also in violation of section 6.08.027(A), a reasonable time, place and manner regulation, by permitting "table dancing." He was further in violation of section 6.08.027(D) by allowing those under 21 into the Booby Trap. This section, too, is a reasonable regulation, not a prohibition of a protected activity. Both sections specifically provide that "no license

---

[9]King County Code 6.08.020 provides:

"Due date for license fees—Character requirement. All license fees are payable to the King County comptroller at least two weeks before the opening of entertainment, and comptroller's receipt presented to the director for approval or rejection. Licenses shall be issued by the director only to persons of good moral character."

shall be issued" to those who refuse to abide by their provisions. Adams continued to be in violation of both sections while his license application was pending, while its denial was being appealed, and after the denial was affirmed. Although denial solely on the grounds of past violations might arguably be prior restraint under *Near,* this is not the factual pattern presented here. Adams' activities, continuing throughout the licensing process, were violations of valid restrictions and provide constitutionally valid grounds for denying his license.[10] Where a decision is reached on valid grounds, the fact that other reasons given for the decision are constitutionally suspect does not invalidate the decision. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977).

*Bittner* does not stand for the proposition that there can be *no* licensing requirement for protected activity. The

---

[10]If sections 6.08.020 and .027(F) are constitutionally infirm, they can be severed from the ordinance and do not invalidate it as a whole. The test for severability of a section of a statute is

> whether the constitutional and unconstitutional provisions are so connected . . . that it could not be believed that the legislature would have passed one without the other; or where the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature.

*Hall v. Niemer,* 97 Wn.2d 574, 582, 649 P.2d 98 (1982), quoting *State ex rel. King Cy. v. State Tax Comm'n,* 174 Wash. 336, 339–40, 24 P.2d 1094 (1933). The ordinance, read as a whole, shows a primary intent to regulate nude entertainment and only incidentally an intent to regulate the qualifications of those who present it. Chapter 6.08 contains a severability clause, section 6.08.047, which provides:

> Should any section, subsection, subdivision, paragraph, sentence, clause or phrase of this chapter or application thereof to any person or circumstance, be declared unconstitutional or invalid for any reason, such decision shall not affect the validity of the remaining portions of this chapter, or its application to any other person or circumstance.

Such clauses, while not controlling the issue of severability, are an aid to consideration of the issue. *Hall,* at 584.

The court below held that Adams did not having standing to challenge section 6.08.020 since his license was not denied under that section. Since we find that the denial was valid under other sections of chapter 6.08, and since section 6.08.020 is severable even if unconstitutional, the question of standing need not now be addressed.

court merely prohibited denials based on past activities. It noted that when considering a governmental authority's licensing power, "the authority to regulate varies, depending upon the type of activity or enterprise involved." *Bittner,* at 751. The test is if the matters considered by the licensing authority are relevant to the particular activity to be licensed. *Bittner,* at 754. Continuing compliance with valid time, place, and manner regulations even of a fully protected activity is certainly a relevant factor in considering the issuance or denial of a license.

## OVERBREADTH

■ Adams' final constitutional argument is that the injunction was overbroad because it prevented him from operating any "public place of amusement/entertainment," not just topless establishments. Although the injunction may have been broadly worded, Adams presents no evidence that he has attempted to operate a different sort of establishment or been denied a license to do so. Thus, he has not shown that he has been prejudiced by any potential overbreadth.

## NO INJURY DEMONSTRATED

■ In addition to his constitutional objections, Adams argues that the preliminary injunction was improper under state law because the County failed to show actual and substantial injury. *LeMaine v. Seals,* 47 Wn.2d 259, 287 P.2d 305 (1955). Granting a temporary injunction is within the sound discretion of the trial court. *Marion Richards Hair Design, Inc. v. Journeymen Barbers Local 195–A,* 59 Wn.2d 395, 367 P.2d 806 (1962). We will reverse that decision only if there is a strong showing of an abuse of discretion. *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 553 P.2d 423 (1976), *appeal dismissed,* 430 U.S. 952, 51 L. Ed. 2d 801, 97 S. Ct. 1594 (1977).

Violation of a statute does not necessarily inflict injury sufficient to warrant an injunction. *Motor Car Dealers' Ass'n v. Fred S. Haines Co.,* 128 Wash. 267, 222 P. 611, 36 A.L.R. 493 (1924). Here, however, the ordinance specifically

provides for injunctions against violations of its provisions. Section 6.08.070.[11] This indicates a decision by the legislative body that the regulated behavior warrants enjoining, and that the violation itself is an injury to the community. It is not the court's role to interfere with this legislative decision.

Adams here did more than operate without a license. His activities were violations of specific regulations and could have been enjoined even if he had first obtained a license. The trial court did not abuse its discretion in issuing a temporary injunction where the ordinance itself provided for this relief.

## ORDER OF CONTEMPT

Finally, Adams assigns error to the order finding him in contempt. He argues that he did not violate the injunction since he had sold the Booby Trap to Alexa Work before the injunction was entered and was no longer an active participant in the operation of the business. The trial court found that Adams was in privity with Work, and careful examination of the record reveals substantial evidence to support this finding of fact. The finding will, therefore, not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Since the injunction explicitly forbade Adams to "encourage, solicit, aid, assist, direct or employ" anyone to do acts that he could not, Work's continuing operation of the Booby Trap in violation of the injunction resulted, by privity, in a violation by Adams.

Adams' argument that the contempt order was improper because the injunction was invalid fails, of course, under our finding that the injunction was properly issued.

---

[11]King County Code 6.08.070 provides:

"Notwithstanding the existence or use of any other remedy, the director may seek legal or equitable relief to enjoin any acts or practices which constitute or will constitute a violation of any business license ordinance or other regulations herein adopted."

The judgment is affirmed.

CALLOW and SCHOLFIELD, JJ., concur.

Reconsideration denied March 1, 1983.

Review denied by Supreme Court May 27, 1983.