[No. 52185-9. En Banc. June 12, 1986.]

KITSAP COUNTY, *Respondent,* v. KEV, INC., *Appellant.*

*James K. Sells* and *Jack Burns,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Ronald A. Franz, Deputy,* for respondent.

ANDERSEN, J.—

FACTS OF CASE

The trial court enjoined Kev, Inc., its officers and other persons closely connected with an erotic dance studio from operating any such studio in Kitsap County. We affirm the injunction as modified.

On February 7, 1983, the Kitsap County Board of Commissioners passed ordinance 92 regulating erotic dance studios. A month later, ordinance 92 was amended by ordinance 92–A. The ordinances put time, place and manner restrictions on topless and erotic dancing in Kitsap County.[1]

Kev, Inc., obtained a license pursuant to these ordinances and in June 1983 opened an erotic dance studio called Fantasy's. The studio was located in the unincorporated town of Gorst in Kitsap County. The license application named Kevin Fjerstad as the sole officer, shareholder and director of Kev, Inc. The trial court found, however, that Norman Ray Adams controlled Fantasy's and was the true owner and moving force behind the business. Adams' failure to identify himself as Fantasy's owner violated section 4 of ordinance 92.

Before Fantasy's opened, a Kitsap County detective visited the studio and talked to those in charge. He testified that he talked to one Jim Schwartz, the "advisor" who

---

[1] A United States District Court judge deemed ordinance 92–A constitutional, except for its closing hour provision. Kev, Inc. v. Kitsap County, No. C83–180R (W.D. Wash. 1984).

would be in charge of hiring and firing and who was to assist in running the business properly. The next day, the detective learned from King County police that Schwartz was really Norman Adams, a person known to be connected with topless dancing and its attendant litigation in the Seattle area.[2]

When Fantasy's opened in June, an undercover officer was assigned to observe the business because the detective had been lied to by Adams and wanted to know what was happening inside. The officer called himself "Woody" and visited Fantasy's a total of 105 times. He observed "scores" of ordinance violations at Fantasy's. Examples included permitting alcohol and its consumption on the premises, hiring a minor as a waitress, violating dancing distance and touching regulations, allowing unlicensed dancers to perform and allowing dancers to solicit tips. The officer also observed arrangements being made for, and actual drug sales, on the premises. The trial court further found that the use of controlled substances by those employed by the club, including manager Fjerstad, was pervasive. In addition, some of the dancers made contacts for prostitution at Fantasy's, the manager purchased sexual favors for associates and sexual acts occurred on the dance studio premises.

The undercover officer ended his observations by arresting the manager for delivery of a controlled substance (a pound of cocaine) in Fantasy's parking lot on February 13, 1984. On February 14, Kitsap County sought a permanent injunction against Fantasy's. A preliminary injunction was issued, and shortly thereafter BSA, Inc., acquired the assets of Kev, Inc. While Russell Eggert is allegedly the sole officer, shareholder and director of BSA, the court found that his stepbrother, Norman Adams, controls that corporation.

The trial judge listened to 4 days of testimony before declaring Fantasy's a public nuisance. He concluded that the only practical remedy was abatement. He also perma-

---

[2]*See County of King ex rel. Sowers v. Chisman*, 33 Wn. App. 809, 658 P.2d 1256 (1983).

nently enjoined Kev, Inc., Fjerstad, Eggert, Adams and BSA, Inc., from operating a business subject to ordinances 92 and 92–A in Kitsap County. The judge so held on the basis that Kev, Fjerstad, Eggert, Adams, and BSA acted in concert with respect to Fantasy's.

Kev, Inc. appealed the trial court's ruling, and the Court of Appeals transferred the appeal to this court.[3]

### ISSUES

ISSUE ONE. Did the trial court err when it concluded that Fantasy's was a public nuisance?

ISSUE TWO. Did the trial court err in issuing a permanent injunction against Fantasy's and against those who operated and controlled it?

### DECISION

ISSUE ONE.

CONCLUSION. The Kitsap County Commissioners validly provided that a studio in violation of ordinance 92 would be declared a public nuisance. Section 11 of that ordinance provides that any "activity, act, or conduct contrary to the provisions of this ordinance is hereby declared to be unlawful and a public nuisance". Under the evidence and the trial court's findings of fact, Fantasy's was properly held to be a public nuisance.

█ An ordinance may not make a thing a nuisance, unless it is in fact a nuisance.[4] Engaging in any business or profession in defiance of a law regulating or prohibiting the same, however, is a nuisance per se.[5] This principle was implicitly upheld in *County of King ex rel. Sowers v. Chisman,* 33 Wn. App. 809, 658 P.2d 1256 (1983). There, the Court of Appeals observed that a King County ordinance

---

[3]RAP 4.3.

[4]*Greenwood v. Olympic, Inc.,* 51 Wn.2d 18, 21, 315 P.2d 295 (1957); 6 E. McQuillin, *Municipal Corporations* § 24.66, at 562 (3d ed. 1980).

[5]*State v. Boren,* 42 Wn.2d 155, 163, 253 P.2d 939 (1953); *State v. Gedarro,* 19 Wn. App. 826, 832, 579 P.2d 949 (1978).

regulating topless dancing provided for injunctions against violations of its provisions. It continued:

> This indicates a decision by the legislative body that the regulated behavior warrants enjoining, *and that the violation itself is an injury to the community.* It is not the court's role to interfere with this legislative decision.

(Italics ours.) *Chisman,* at 819.

The trial court echoed this statement in its memorandum opinion: "In the Ordinances under consideration, Section 11 states that violation is a nuisance and this is a legislative decision, that violation of the Ordinance is in itself an injury to the community."

Entirely aside from section 11 and the ordinance violations, the other illegal activities which were permitted to be openly carried on at Fantasy's satisfied the statutory definitions of a public nuisance. A nuisance is defined by RCW 7.48.120:

> Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

A public nuisance is a nuisance that affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal.[6]

Almost daily violations of controlled substance and prostitution laws is activity that violates the comfort, repose, health, or safety of others, and can clearly affect an entire neighborhood or community. Fantasy's attracted drugs and drug dealers from Philadelphia, Alaska and Seattle into the town of Gorst. The drug pushers and users often outnumbered the studio's regular patrons. Under either the language of the Kitsap County ordinance or the nuisance

---

[6]RCW 7.48.130.

statutes, the illegal activities at Fantasy's were so pervasive that the studio was a public nuisance.

ISSUE TWO.

CONCLUSION. The trial court properly abated Fantasy's because it was a public nuisance. The trial court erred however, in permanently enjoining those who operated and controlled Fantasy's from operating any other lawful dance studios in Kitsap County.

Kev bases its challenges to the permanent injunction on the premise that nude dancing is constitutionally protected activity. It is true, as the United States Supreme Court has held, that nude dancing is protected by the First Amendment.[7] That protection, however, is not absolute.[8] While the communication of a nude dancer may be entitled to First Amendment protection, the nudity itself is conduct and subject to the police powers of the State.[9] As this court stated in that connection in *Seattle v. Buchanan*, 90 Wn.2d 584, 597, 584 P.2d 918 (1978):

> [United States Supreme Court cases] have either expressly or tacitly acknowledged that [nudity] is subject to reasonable regulation, even when it is done as an incident to that expression which is protected by the First Amendment.

Kev does not challenge the time, place and manner restrictions imposed by ordinances 92 and 92–A. Rather, Kev challenges the injunction itself by claiming that it is an impermissible prior restraint on protected speech. Prior restraints are "'official restrictions imposed upon speech or other forms of expression in advance of actual publica-

[7]*Schad v. Mount Ephraim*, 452 U.S. 61, 65–66, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (1981).

[8]*Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975).

[9]*Chisman*, at 813; *see also Curtis v. Seattle*, 97 Wn.2d 59, 63, 639 P.2d 1370 (1982); *Seattle v. Buchanan*, 90 Wn.2d 584, 597, 584 P.2d 918 (1978).

tion.'"[10] The United States Supreme Court has explained that the reason prior restraints are presumed invalid is because "'a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand."[11]

█ The permanent injunction issued here punishes only a few, and only after they abused their First Amendment freedoms. It is not a prior restraint, at least to the extent that it permanently abates the activities at Fantasy's. The order was issued after Fantasy's opened, after the violations occurred, and after the trial court concluded that abatement was the only way to stop the illegal activities at Fantasy's.

We thus hold that the trial court's order was correct insofar as it permanently enjoined Fantasy's from operating in Kitsap County. That injunction, as it pertained to Fantasy's, also correctly included Kev, Inc., Kevin Fjerstad, Norman Adams, BSA, Inc., and Russell Eggert.

In this connection we observe that the County sued Kev, Inc., rather than Fantasy's itself. An injunction issues against persons, rather than against a business as such.[12] Corporations as well as natural persons, however, may be enjoined from acting in violation of law.[13]

Kev, Inc., was properly named as a defendant and

---

[10]*State v. Coe*, 101 Wn.2d 364, 372, 679 P.2d 353 (1984) (quoting with approval from *Seattle v. Bittner*, 81 Wn.2d 747, 756, 505 P.2d 126 (1973) (quoting Emerson, *The Doctrine of Prior Restraint*, 20 Law & Contemp. Probs. 648 (1955)).

[11]*Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 n.13, 63 L. Ed. 2d 413, 100 S. Ct. 1156, *reh'g denied*, 446 U.S. 947, 64 L. Ed. 2d 804, 100 S. Ct. 2177 (1980), quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975).

[12]43 C.J.S. *Injunctions* § 39 (1978); *Vermillion v. State ex rel. Carman*, 210 Miss. 255, 263, 49 So. 2d 401 (1950); *Fleckenstein Bros. Co. v. Fleckenstein*, 66 N.J. Eq. 252, 253, 57 A. 1025 (1904).

[13]*See* 10 W. Fletcher, *Private Corporations* § 4858 (rev. perm. ed. 1978); *Sundaco, Inc. v. State*, 463 S.W.2d 528 (Tex. Civ. App. 1970).

included in the injunction because that corporation allegedly owned and operated Fantasy's. The other parties were also properly included in the injunction because of their ties to Kev, Inc. As one authoritative text states:

> [W]henever an injunction, whatever its nature may be, is directed to a corporation, it also runs against the corporation's officers, agents, employees and servants, provided they have notice of its issuance, even though they were not made parties defendant to the suit, were not served with notice of the application, and did not receive the same notice of the granting of the injunction as did the corporation.

(Footnote omitted.) 10 W. Fletcher, *Private Corporations* § 4875, at 339 (rev. perm. ed. 1978); *see also* CR 65(d).

Under this rule, Kevin Fjerstad (who was listed on Fantasy's license application as the sole officer, director and shareholder of Kev, Inc.) clearly was properly enjoined from operating Fantasy's in Kitsap County. The trial court listed several additional facts that led it to include the other parties in the injunction order. It noted that Adams found the site for Fantasy's, paid the rent for 5 months while remodeling was in process and paid the rent after the studio was closed; that Adams hired Fjerstad to manage Fantasy's, provided the money for opening Fantasy's and promised to pay Fjerstad a salary; that Adams appeared at Fantasy's on a weekly basis, and during those visits took money from the business and "exercised complete control"; and that Fantasy's succeeded financially only so long as Adams fed money into it.

The undercover officer testified that Russell Eggert came into Fantasy's several times to see if business was as bad as Fjerstad claimed. The trial court observed that Eggert, who managed a topless studio called the "Lucky Lady" in Federal Way, acquired Kev's assets after Fantasy's closed. The court described the transaction as being at less than arm's length:

> Eggert testified that the assets of Kev, Inc. were taken in consideration of forgiveness of a debt and that he intended to operate the business. The debt was not

memorialized by any writing or promissory note, and Eggert was totally ignorant of any of the normal business facts that would affect the purchase of a bona fide business . . . Eggert testified that he assumed all of the obligations of Kev, Inc. without being aware of what those obligations were.

The court found Adams was the true owner of the Lucky Lady and the moving force behind it and BSA, Inc., and that Adams' control over the parties mentioned, including Eggert, warranted their inclusion in the injunction. It held:

> The application or scope of the relief granted herein should be ascertained by those actually shown to be the real parties is [sic] interest. In this respect the Court has in essence pierced Kev, Inc.'s corporate veil. When this is done, Adams is shown to be the real owner and force behind Kev, Inc. and Fantasy's. Furthermore, with respect to Fantasy's, Kev, Inc., Fjerstad, BSA, Inc., Eggert and Adams have acted in concert with one another.

We agree with the trial court's decision to enjoin all of the aforesaid from operating Fantasy's in Kitsap County. The rest of the injunctive order, however, cannot be upheld. The trial court permanently enjoined Fjerstad, Eggert, BSA, Inc., and Adams from operating *any* erotic dance studio in Kitsap County. Injunctions must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law.[14] To the extent that the order prevents the parties named from operating a lawful business in Kitsap County, it can be viewed as an invalid prior restraint.[15] This is not to say, however, that an appropriately drafted ordinance could not restrict or prevent the relicensing of these people and the corporation because of their previous operations.

The analysis herein also disposes of the remaining issues

---

[14]*See Davis v. Romney,* 490 F.2d 1360, 1370 (3d Cir. 1974).

[15]*See* T. Spelling & J. Lewis, *Injunctions* § 290, at 583 (1926) (it is a universally accepted rule that when a proper case for injunctive relief is presented, the injunctive coercion should be confined to unlawful acts or courses of conduct).

raised. In sum, the trial court's injunction is proper insofar as it permanently enjoined the operation of Fantasy's by Kev, Inc., and its agents and officers, but is inappropriate to the extent that it goes beyond that.

Affirmed as modified.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., concur.