[No. 23175-8-I.   Division One.   September 11, 1989.]

D.C.R. ENTERTAINMENT, INC., *Respondent*, v. PIERCE COUNTY, *Appellant*.

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for appellant.

*Jack R. Burns* and *Burns & Hammerly, P.S.,* for respondent.

WEBSTER, J.—Pierce County appeals a writ of mandamus compelling its Auditor to grant an adult entertainment license and an order requiring it to pay attorney's fees in the mandamus action. D.C.R. Entertainment, Inc. (DCR) seeks attorney's fees on this appeal pursuant to RAP 18.1, relying as it did below on RCW 64.40.020.

## FACTS

DCR operates a nude dancing establishment. Initially, it conducted its business pursuant to a topless dancing license. The County then passed an ordinance on August 25, 1987, which required all businesses offering nude dancing entertainment to obtain an adult entertainment license. Pierce County Code (PCC) 5.14.020. DCR applied for an adult entertainment license on September 14, 1987, soon after the new ordinance became effective.

The new law required license applicants to pay a $500 license fee and to wait 2 weeks. PCC 5.14.030. The ordinance mandated denial of a license for any false statement or information in connection with a license application or any violation or permitted violation of its provisions. PCC

5.14.070. DCR interpreted these provisions to require the County Auditor to issue a license within 2 weeks if there were no grounds for denying a license. When 2 weeks passed and the County told DCR that a license would not issue for several more weeks, DCR sought a write of mandamus.

Ten days later, the Pierce County Auditor provisionally denied DCR's application pursuant to a general licensing provision. This provision permits the County Sheriff to object to the issuance of a license by alleging facts tending to show that the issuance of the license "will harm the public health, safety or morals, or will result in a violation of the zoning or license code, or violation of other laws". PCC 50.01.040. At the time, a license revocation proceeding was scheduled to determine whether DCR's original topless dancing license should be revoked. Also, criminal charges were pending following an alleged raid on DCR's premises.

The Superior Court for King County, having venue pursuant to RCW 36.01.050, initially ordered the Pierce County Auditor to make a final decision by November 2, 1987. The Auditor denied DCR's application on November 5, 1987, citing incomplete fingerprint information on DCR's application form and its alleged employment of underage and unlicensed dancers. The Superior Court reversed the Auditor's decision and ordered the County to issue a license.

## MOOTNESS

DCR argues that the County's appeal is moot for two reasons. First, the County issued an unrelated dance license on May 31, 1988. Thus, DCR maintains, the County waived its objection under the general licensing provision. Second, DCR notes that more than a year has passed since the Auditor's final decision. Under the new ordinance, an applicant may not be denied an adult entertainment license for more than a year. PCC 5.14.070.

Neither argument applies to the award of attorney's fees. The propriety of the award is plainly not moot, since the County still has to pay it. The mandamus issue is not moot

either. The unrelated dance license does not authorize DCR to offer nude dancing to its patrons. PCC 5.14.020. Nor was DCR denied an adult entertainment license for more than a year, because the Superior Court ordered the County to issue the license. Presumably, DCR still has that license.

### AVAILABILITY OF MANDAMUS

The County argues that issuance of an adult entertainment license is discretionary, and that no abuse of discretion is present. Further, the County contends, DCR waived a plain, speedy, and adequate remedy at law by not pursuing an administrative appeal. Either claim, if valid, precludes a statutory writ of mandamus. *See* RCW 7.16.160; RCW 7.16.070; *Bock v. Board of Pilotage Comm'rs,* 91 Wn.2d 94, 98, 586 P.2d 1173 (1978).

■ We reject the County's argument that issuance of an adult entertainment license is discretionary. The County's argument is premised on a reading of its general licensing provisions in PCC 50.01 to supplement its adult entertainment chapter, PCC 5.14. This premise is flawed as a matter of statutory construction, because the general licensing provisions apply by their terms only to licenses issued under title 50.[1] The Pierce County Council is presumed to have known this when it enacted the adult entertainment

---

[1]*See* PCC 50.01.030 (identifying grounds for denial of licenses "issued pursuant to the provisions of this title"); 50.01.040 (allowing sheriff "while an application for any license provided for under the provisions of this title is pending" to petition for denial of the same); 50.01.050, .070, .080, .090 (respectively specifying 1–year duration, requirements for renewal, mandatory display on premises, and grounds for suspension and revocation of licenses "issued pursuant to the provisions of this title"); 50.01.100–.110 (creating office of hearing examiner with authority to deny, suspend, or revoke any license "authorized pursuant to this title" to handle "cases filed pursuant to the provisions of this title"); 50.01.130 (establishing right of appeal for "[a]ny aggrieved person having standing under this title"); 50.01.150 (limiting transfer of and reapplication for licenses "issued pursuant to this chapter"); 50.01.170 (requiring "applicant for any license under this title" to carry liability insurance); 50.01.180 (conditioning "privilege of having any license included in this title" on consent to inspection of licensed premises); 50.01.190–.200 (setting daily monetary penalty for engaging in any licensed activity "for which a license is required pursuant to the provisions of this title"); 50.01.210 (establishing misdemeanor penalty for "violating or failing to comply

ordinance. *See Baker v. Baker,* 91 Wn.2d 482, 486, 588 P.2d 1164 (1979); *Kingston Lumber Supply Co. v. High Tech Dev. Inc.,* 52 Wn. App. 864, 866, 765 P.2d 27 (1988).

■ The Council presumably concluded, after having its former law banning nude dancing struck down, that only a plain, clear, and concrete regulation of nude dancing would pass constitutional challenge. *See BSA, Inc. v. King Cy.,* 804 F.2d 1104, 1106–09 (9th Cir. 1986) (striking down PCC 35.02.308A–D on First Amendment grounds). The new ordinance makes denial, suspension, or revocation of an adult entertainment license mandatory if objective, content–neutral facts are established: false information in connection with a license application or any violation or permitted violation of the ordinance. PCC 5.14.070. In contrast, the general licensing provisions require "good moral character", PCC 50.01.030(A), and permit the County to deny licenses based on "the public health, safety or morals" or potential or past violations of any law. PCC 50.01.040. These provisions may not be applied to adult entertainment licenses, because a license to engage in constitutionally protected expression may not be denied based on the "character of the applicant" or the "effects upon the general welfare". *Staub v. Baxley,* 355 U.S. 313, 314 n.1, 321, 2 L. Ed. 2d 302, 78 S. Ct. 277 (1958). Denying an adult entertainment license based on a past violation of law is equally invalid. *Seattle v. Bittner,* 81 Wn.2d 747, 505 P.2d 126 (1973).

■■ The new ordinance sets forth the sole grounds for denying an adult entertainment license, and those grounds are not discretionary. *See* PCC 5.14.070. The ordinance does not expressly make issuance of a license mandatory when grounds for denial are not present, but it must be so construed. Otherwise, there would be an unconstitutional absence of standards to guide licensing officials. *See Kunz v. New York,* 340 U.S. 290, 293, 95 L. Ed. 2d 280, 71 S. Ct.

---

with any of the provisions of this title"); 50.01.220 (providing for seizure of license "when a violation of the title has been committed").

312 (1950); *Saia v. New York,* 334 U.S. 558, 559–60, 92 L. Ed. 1574, 68 S. Ct. 1148 (1947). The County Auditor has no discretion to deny an adult entertainment license; thus, issuance is a ministerial act which mandamus may compel. *See State ex rel. Klappsa v. Enumclaw,* 73 Wn.2d 451, 453, 439 P.2d 246 (1968); *State ex rel. Craven v. Tacoma,* 63 Wn.2d 23, 27, 385 P.2d 372 (1963); *Teed v. King Cy.,* 36 Wn. App. 635, 643–44, 677 P.2d 179 (1984).

■ We next address the County's argument that DCR had a plain, speedy, and adequate remedy at law. The general rule is that a party who fails to exhaust administrative remedies may not be heard to challenge them by way of mandamus. *Bock,* at 98 (interpreting RCW 7.16.170); *Lechelt v. Seattle,* 32 Wn. App. 831, 650 P.2d 240 (1982). This rule is not applicable because the County's administrative review procedures do not satisfy minimum constitutional requirements.

■■ Nude dancing is protected expression under the First Amendment, *Schad v. Mount Ephraim,* 452 U.S. 61, 66, 68 L. Ed. 2d 671, 101 S. Ct. 2176 (1981), and under article 1, section 5, of our State Constitution: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." *See O'Day v. King Cy.,* 109 Wn.2d 796, 802–03, 749 P.2d 142 (1988). The prevailing view under the First Amendment is that nude dancing is entitled to the same degree of protection as is expression at the core of the amendment. *See Kev, Inc. v. Kitsap Cy.,* 793 F.2d 1053, 1058 (9th Cir. 1986). "The settled rule is that a system of prior restraint "avoids constitutional infirmity only if it takes place under the procedural safeguards designed to obviate the dangers of a censorship system.'" *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975) (quoting *Freedman v. Maryland,* 380 U.S. 51, 58, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965)). At least three safeguards are required: (1) the burden of instituting judicial proceedings, and of proving the validity of the restraint, must rest on the censor; (2) any restraint prior to judicial

review must be for a specified brief period and must maintain the status quo; (3) a prompt, final, judicial determination must be assured. *Southeastern Promotions,* 420 U.S. at 560; *Freedman,* 380 U.S. at 58–59.

Passage of the new ordinance, coupled with the County's denial of an adult entertainment license, upset the status quo. The Auditor's decision acted as a prior restraint because, without a license, DCR could not engage in protected expression. PCC 5.14.020. The licensing requirement cannot be characterized as a time, place, or manner restriction, because it contains no temporal, geographic, or other limitation, other than its jurisdictional scope. *See State v. Coe,* 101 Wn.2d 364, 373, 679 P.2d 353 (1984); PCC 5.14-.020. The administrative appeal procedures available to DCR did not ensure prompt, final, judicial review within a specified brief period. They did not require the County to institute immediate judicial proceedings to justify the license denial. Instead, DCR had to safeguard its constitutional right by mandamus. DCR did not have a constitutionally adequate remedy in the ordinary course of law, so mandamus was appropriate to provide that remedy. *See* RCW 7.16.170.

### Order Compelling License

The Superior Court accepted the County's allegation that DCR violated the new ordinance by providing incomplete or false fingerprint information and by employing underage and unlicensed dancers. However, the court found, "the investigation which revealed these violations was itself flawed due to excessive delay." We are aware of no authority for an exclusionary rule in the current context. Thus, our only inquiry is whether the County's allegations, if true, are constitutionally sufficient to deny an adult entertainment license.

█ Denying an adult entertainment license has the *effect of proscribing protected expression.* Thus, the justification should (1) be content neutral, (2) directly advance ·a significant or compelling governmental interest, and (3)

employ narrowly tailored means so that the restraint on protected expression is "no greater than is essential to the furtherance of that interest." *United States v. O'Brien,* 391 U.S. 367, 377, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968) (rule applicable to conduct having expressive and non expressive elements; conviction for public burning of draft card upheld); *cf. Erznoznik v. Jacksonville,* 422 U.S. 205, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975) (display of nude films at drive-in theater protected, though films were visible from adjacent streets and a nearby church parking lot).[2]

Under the 3-part test, inaccurate and incomplete fingerprint information cannot serve as a basis for refusing to issue a license to DCR, because the new ordinance does not require this information of businesses. *See* PCC 5.14.040. The County does not need information that it does not require by ordinance. Accuracy aids law enforcement, which is a significant interest, but it is fully served when the County has the information it needs.

---

[2]Whether or not this is the controlling federal standard, it is the proper one to apply under article 1, section 5 of our State Constitution. *Cf. People ex rel. Arcara v. Cloud Books, Inc.,* 68 N.Y.2d 553, 503 N.E.2d 492, 510 N.Y.S.2d 844 (1986). On remand, after being reversed by the United States Supreme Court on the ground that the *O'Brien* draft card burning case was inapposite, *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 92 L. Ed. 2d 568, 106 S. Ct. 3172 (1986), the New York Court of Appeals nevertheless held, based on that state's constitution, that closure of a bookstore sufficiently affected the owner's right of free expression, that the State had to show that closure was "the only available means to abate the nuisance." *People ex rel. Arcara v. Cloud Books, Inc.,* 68 N.Y.2d at 555. *Accord, Kitsap Cy. v. Kev, Inc.,* 106 Wn.2d 135, 141, 720 P.2d 818 (1986) ("abatement was the only way to stop the illegal activities at Fantasy's"). Emphasizing that minimum national safeguards established by the United States Supreme Court could not be considered dispositive in determining the scope of the state constitutional guaranty of free expression, New York's highest court analyzed closure as a prior restraint. 68 N.Y.2d at 557-58, 510 N.Y.S.2d at 846-47. Significantly, the constitutional provision in question mirrored article 1, section 5, of our Constitution. *See* N.Y. Const. art. 1 § 8: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right . . .", *quoted in Arcara,* 68 N.Y.2d at 556, n.*. Unlike the First Amendment, the quoted language virtually bans prior restraints per se. *State v. Coe,* 101 Wn.2d 364, 374, 679 P.2d 353 (1984).

■ The County's interest in preventing the employment of minors as nude dancers is compelling. *New York v. Ferber,* 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982). Requiring that all dancers be licensed directly serves this interest. Denying an adult entertainment license altogether is perhaps more effective, but it is not narrowly tailored unless it is the only way to ensure that minors will not be hired in the future.

The Superior Court did not permit the County to prove that denying a license is the only way to achieve its legitimate objectives. Thus, we must remand for this factual determination. If the County proves that ordinance violations are so "pervasive" at DCR's premises that denying a license is "the only practical remedy", the County may deny the license. *Kitsap Cy. v. Kev, Inc.,* 106 Wn.2d 135, 137, 140–41, 720 P.2d 818 (1986). However, "the constitution does not permit a licensing agency to deny to any citizen the right to exercise one of his fundamental freedoms on the ground that he has abused that freedom in the past." *Seattle v. Bittner,* 81 Wn.2d 747, 756, 505 P.2d 126 (1973). Thus, the County may not deny DCR a license for a lawful establishment elsewhere in the county. *See Kev,* 106 Wn.2d at 143–44.

## ATTORNEY'S FEES

DCR relies on RCW 64.40.020 to defend the lower court's award of attorney's fees. The County contends that RCW 64.40.020 does not apply.

■ An award of attorney's fees is proper only if specifically authorized by statute, by agreement of the parties, or upon recognized equitable grounds. *Pennsylvania Life Ins. Co. v. Department of Empl. Sec.,* 97 Wn.2d 412, 413, 645 P.2d 693 (1982); *Crane Towing, Inc. v. Gorton,* 89 Wn.2d 161, 176, 570 P.2d 428, 97 A.L.R.3d 482 (1977). RCW 64.40.020 authorizes an award of attorney's fees only in favor of "the prevailing party" of an "action for damages" brought under chapter 64.40. *See* RCW 64.40.020(1), (2). Here, DCR concedes that it did not bring an action for

damages under RCW 64.40.020. DCR did not even have an action for damages, because the operation of its business was not affected by the County.

We reverse the award of attorney's fees because DCR could not have satisfied the prerequisite for an award of attorney's fees under RCW 64.40.020(2). We affirm the writ of mandamus. The County's denial of an adult entertainment license imposed a prior restraint without affording DCR procedural safeguards to which it was constitutionally entitled. However, we remand to permit the County to prove its allegations. If the County proves that denying a license is the only way to prevent illegality at DCR's premises, DCR's license for those premises may be revoked.

Affirmed in part, reversed in part, and remanded.

SWANSON and FORREST, JJ., concur.