**FILED**
**APRIL 14, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| YAKIMA COUNTY, a political subdivision of the State of Washington, | ) ) ) | No. 36289-2-III |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| MLM ENTERTAINMENT, LLC, a Washington limited liability company, d/b/a STICKY BUDZ; MUFFET LAND, LLC, a Washington limited liability company; TANDEM, LLC, a Washington limited liability company; AD LIB ENTERPRISES, LLC, a Washington limited liability company; and DEF CLOWN, LLC, a Washington limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Appellants. | ) | |

SIDDOWAY, J. — MLM Entertainment, LLC, which is licensed by the Washington

State Liquor and Cannabis Board (WSLCB) as a tier 3 marijuana producer and a

marijuana processor, appeals the trial court's summary judgment order declaring its

Yakima County operations a nuisance and issuing a warrant of abatement.[1] We affirm.

## FACTS AND PROCEDURAL BACKGROUND

About a year after Washington voters approved Initiative 502 (I-502), providing

for the licensed and regulated production, processing and sale of recreational marijuana,

the Yakima County Board of Commissioners (Board) adopted a six-month moratorium

prohibiting production, processing, and retailing in unincorporated areas of Yakima

County. Following a public hearing process, the Board adopted Ordinance 4-2014,

making the prohibition permanent in June 2014. The ordinance was and remains codified

in Title 19 of the Yakima County Code (YCC) at YCC 19.30.030(7).

Notwithstanding the prohibition, MLM Entertainment LLC, dba Sticky Budz,

began production and processing operations on property located in an unincorporated

area of the county in December 2014.

In February 2018, the county commenced an action against MLM, seeking a

declaration that the conditions on the MLM property constituted a public nuisance and

asking for injunctive relief and a warrant of abatement. It alleged that the production and

---

[1] Also appealing is Muffet Land LLC, the owner of the land on which MLM Entertainment LLC operates and a co-defendant below. For convenience we refer to the two entities collectively as "MLM."

processing operations were a public nuisance because they were in violation of the county code.

In answering the complaint, MLM asserted nine affirmative defenses, including that YCC 19.30.030(7) and its enforcement violated MLM's federal and state constitutional rights and its rights under state laws.

After several months, the county moved for summary judgment on all of its claims against MLM and three entities that had intervened to challenge the county's ordinance and its enforcement. In support of its nuisance claim, the county argued that MLM's land use violated the county's development code, Title 19 YCC, and thus MLM's land use was a public nuisance under the county's building code, Title 13 YCC. The evidentiary support for its motion included substantial documentation of the history of the Board's adoption of Ordinance 4-2014.

In opposing the county's motion, MLM argued that the county had not identified any type of harm from its operations that RCW 7.48.120 identifies as a nuisance.[2] It

---

[2] RCW 7.48.120 provides:

Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

acknowledged that the county pointed to MLM's alleged code violation as entitling it to relief. But it argued, "Critically, nothing in the development code (or building code) expressly states that marijuana land uses are a public nuisance." Clerk's Papers (CP) at 669.

MLM also argued that "[a]n ordinance may not make a thing a nuisance, unless it is in fact a nuisance," citing *Kitsap County v. Kev, Inc.*, 106 Wn.2d 135, 138-39, 720 P.2d 818 (1986) and *Greenwood v. The Olympic, Inc.*, 51 Wn.2d 18, 21, 315 P.2d 295 (1957). It contended that the only arguable evidence of an actual nuisance presented by the county was citizen input during the proceedings leading up to the adoption of Ordinance 4-2014 and, gleaning 16 "generalities" from that input (an example being, "[m]arijuana is a gateway drug"), CP at 673, it argued that many of the generalities from citizen input did not qualify as facts, based on personal knowledge, as required by CR 56(e). It also selected seven of the generalities and showed they were disputed with declarations from three experts whose overarching theme was that marijuana use presents a lesser risk to the user than alcohol.

Finally, MLM argued that the county was not entitled to judgment as a matter of law because prohibiting the production, processing and retail sale of marijuana violates equal protection.

After hearing argument of the motion, the trial court granted it and issued a warrant of abatement. MLM appeals.

ANALYSIS

When the issue on appeal is the entry of summary judgment, our review is de novo; we engage in the same inquiry as the trial court. *Grundy v. Thurston County*, 155 Wn.2d 1, 6, 117 P.3d 1089 (2005). Summary judgment is appropriate if the pleadings demonstrate that there is no genuine issue as to any material fact. CR 56(c). We view all facts and all reasonable inferences in the light most favorable to the nonmoving party. *Rhoades v. City of Battle Ground*, 115 Wn. App. 752, 758, 63 P.3d 142 (2002). Summary judgment is proper only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

In appealing the grant of summary judgment, MLM identifies two issues. It contends, first, that there are genuine issues of material fact whether its operations constituted a public nuisance. Its second contention is that YCC 19.30.030(7) violates equal protection by unreasonably distinguishing between those within the class (marijuana producers and sellers) and those outside the class (alcohol producers and sellers). We address the issues in that order.

I. ANALYZING THE YAKIMA COUNTY CODE AS CREATING A "NUISANCE PER SE," MLM DOES NOT DEMONSTRATE A GENUINE ISSUE OF MATERIAL FACT

"'Nuisance is "a substantial and unreasonable interference with the use and enjoyment of land."'" *Grundy*, 155 Wn.2d at 6 (quoting *Bodin v. City of Stanwood*, 79

Wn. App. 313, 318 n.2, 901 P.2d 1065 (1995) (quoting, in turn, 1 WILLIAM H. RODGERS,

ENVIRONMENTAL LAW § 2.2, at 33 (1986))).

Washington's law of nuisance is codified in chapter 7.48 RCW, which broadly

defines "nuisance" as "unlawfully doing an act, or omitting to perform a duty, which act

or omission either annoys, injures or endangers the comfort, repose, health or safety of

others . . . or in any way renders other persons insecure in life, or in the use of property."

RCW 7.48.120; *Grundy*, 155 Wn.2d at 6. Nuisance claims may be brought either by

private individuals for damages and abatement of public or private nuisances or, in the

case of public nuisances, may be brought by public entities. RCW 7.48.020. A public

nuisance is a nuisance that "affects equally the rights of an entire community or

neighborhood, although the extent of the damage may be unequal." RCW 7.48.130.

The county contends that provisions of its county code make the production,

processing and retail sale of marijuana a "nuisance per se," as a result of which it was not

required to present evidence that MLM's operations were annoying, injuring or

endangering county residents. But MLM points to the decisions in *Greenwood* and *Kev*

as holding that municipal and county ordinances "may not make a thing a nuisance,

unless it is in fact a nuisance." *Greenwood*, 51 Wn.2d at 21; *Kev*, 106 Wn.2d at 138.

The facts and outcome in *Greenwood* are helpful to MLM. The Supreme Court

held in that case that a wide stairway lacking an intermediate handrail required by the

Seattle building code was not a nuisance, notwithstanding a municipal ordinance saying

that a failure to conform to the building code "'shall be deemed . . . a nuisance.'"

51 Wn.2d at 20 (alteration in original) (quoting Seattle building code § 1097 (1942)).

The court reasoned that "[c]ommon sense and common experience indicated that a failure

to have intermediate handrails on stairs which had been in constant use by the public for

almost thirty years, did not constitute a public nuisance, the 1942 Seattle city ordinance to

the contrary notwithstanding." *Id.* at 21.

The Supreme Court's considerably more recent decision in *Kev* distinguishes

*Greenwood*, however, in a manner not helpful to MLM. While it repeats *Greenwood*'s

holding, stating, "[a]n ordinance may not make a thing a nuisance, unless it is in fact a

nuisance," it states in the next breath, "Engaging in any business or profession in defiance

of a law regulating or prohibiting the same, however, is a nuisance per se." 106 Wn.2d at

138 (citing *State v. Boren*, 42 Wn.2d 155, 163, 253 P.2d 939 (1953); *State v. Gedarro*, 19

Wn. App. 826, 832, 579 P.2d 949 (1978)). *Kev* speaks approvingly of *County of King ex*

*rel. Sowers v. Chisman*, in which this court enforced an ordinance restricting topless

dancing, explaining that where the ordinance specifically provided for injunctions against

violation of its provisions:

> "This indicates a decision by the legislative body that the regulated
> behavior warrants enjoining, *and that the violation itself is an injury to the*
> *community*. It is not the court's role to interfere with this legislative
> decision."

7

106 Wn.2d at 139 (quoting *Chisman*, 33 Wn. App. 809, 819, 658 P.2d 1256 (1983)). *See accord Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 277, 337 P.3d 328 (2014).

Under controlling authority, then, if MLM's operations are a prohibited nuisance by ordinance, they are a nuisance per se.

MLM's next argument is that only by a too-attenuated analysis can the Yakima County Code be read to declare marijuana production, processing and retail sale to be a nuisance. Ordinance 4-2014 prohibited such operations, but did not declare them to be a nuisance. In its complaint, the county alleged that MLM's property use was a public nuisance under statute, under YCC 6.20.010, YCC 13.25.060(1), "and other applicable YCC provisions." CP at 25. In its memorandum in support of its motion for summary judgment, the county relied on a several step analysis:

- It is unlawful to use or cause to be used buildings structures, improvements or premises in a manner not in conformity with Title 19. YCC 19.01.020(1)(b).

- Title 19 YCC prohibits the production, processing, and retail sale of marijuana in unincorporated Yakima County. YCC 19.30.030(7).

- Title 13 YCC provides that compliance with the zoning requirements provided by Title 19 YCC shall be a condition precedent to the issuance of any permit subject to land use approval. YCC 13.04.020.

- "[C]ontinuing violations of [Title 13 YCC] may be enjoined or ordered abated in a civil proceeding for injunction or for abatement. For purposes of abatement actions, such violations are declared to be public nuisances." YCC 13.25.060(1).

- Nuisances affect the comfort, repose, health or safety of others. YCC 6.20.010.

- Title 19 YCC states that the county is entitled to address and remedy violations of the title in accordance with the "enforcement provisions of YCC Chapter 13.25 of the Yakima County Code, when a violation has been determined under the provisions of YCC Title 13." YCC 19.01.060(1).

*See* CP at 198-99.

In granting summary judgment, the trial court cited YCC 16B.11.010 and 16B.01.020 as additional support for finding MLM's violation of YCC Title 19 to be a public nuisance. YCC 16B.11.010 provides that any use of property contrary to the provisions of any title of the code listed in YCC 16B.01.020 "shall be and the same is declared to be a public nuisance." YCC 16B.01.020 provides that Title 16B applies to applications for land use or environmental permits subject to review under Titles 16, 16C, 16D and 19.

While MLM characterizes the county's argument from the interplay of multiple code provisions as strained, it cites no authority that prevents us from gleaning the Board's intent from all it has said in related building, development, and enforcement provisions. Under the Yakima County Code, MLM's operations are a nuisance per se.

Because MLM's operations are a nuisance per se, it is irrelevant that some of the generalities gleaned from citizen input into the adoption of Ordinance 4-2014 are disputed.

II.     MLM DOES NOT DEMONSTRATE THAT YCC 19.30.030(7) VIOLATES EQUAL
PROTECTION

9

In arguing that summary judgment was inappropriate because YCC 19.30.030(7) violates equal protection, MLM concedes the ordinance is subject to "rational basis" review, and contends that it fails only the requirement that there be reasonable grounds to distinguish between those within and without the class.[3] It provides the following statement of the issue on review:

> I-502 requires that marijuana be regulated in the same fashion as alcohol. Despite this mandate, the County bans WSLCB licensees who produce and sell marijuana while allowing WSLCB licensees who sell and produce alcohol. The County has offered no reasonable basis for this distinction.

Opening Br. of Appellant at 2.

To begin with, I-502 does not require local governments to regulate marijuana in the same fashion as alcohol. Under article XI, section 11 of the Washington Constitution, counties may make and enforce all regulations that do not conflict with state law, and in *Emerald Enterprises, LLC v. Clark County*, this court held that the legal changes wrought by the initiative did not preempt local government regulation.[4] 2 Wn. App. 2d 794, 814-18, 413 P.3d 92 (2018). As a general rule, the fact that an activity can be licensed under state law does not mean the activity must be allowed under local law, and in *Emerald*

---

[3] This is the second of three requirements of the rational basis test. In addition to there being reasonable grounds to distinguish between those within and those without the class, the legislation must apply alike to all members within the designated class and the classification must have a rational relationship to the purpose of the legislation. *Convention Ctr. Coal. v. City of Seattle*, 107 Wn.2d 370, 378-79, 730 P.2d 636 (1986).

[4] The Washington Supreme Court denied review of *Emerald Enterprises, LLC v. Clark County*, 190 Wn.2d 1030, 421 P.3d 445 (2018).

*Enterprises*, this court applied that general rule to the production and sale of marijuana.

It also held that local prohibition of the sale of marijuana does not thwart the state law's

purpose, because the state law's purpose is to regulate, not to promote or encourage the

sale, production, or use of marijuana. *Id.* at 809. The court observed that the WSLCB's

own regulation provides that "[a] marijuana retailer license 'shall not be construed as a

license for, or an approval of, any violations of local rules or ordinances, including . . .

zoning ordinances.'" *Id.* at 806 (second alteration in original) (quoting WAC 314-55-

020(15)). And it observed that legislation enacted after I-502 was approved provides for

revenue sharing of marijuana excise taxes with local governments, excluding

"'*jurisdictions that do not prohibit the siting of any state licensed marijuana producer,

processor, or retailer*.'" *Id.* at 810 (quoting RCW 69.50.540(2)(g)(i)(B)).

As for the fact that the county bans the production and sale of marijuana while

allowing the production and sale of alcohol, it is MLM's burden in making an equal

protection challenge to demonstrate that there is no reasonable basis for classifying

marijuana land uses as those that are prohibited. *Forbes v. City of Seattle*, 113 Wn.2d

929, 943, 785 P.2d 431 (1990). "Legislative bodies have very extensive powers to make

classifications for purposes of legislation." *Sonitrol Nw., Inc. v. City of Seattle*, 84 Wn.2d

588, 590, 528 P.2d 474 (1974). "It is not our function to . . . criticize the public policy

which may have prompted adoption of the ordinance." *Forbes*, 113 Wn.2d at 943-44.

"So long as the 'classification is neither capricious nor arbitrary, and rests upon some

11

reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'" *Id.* at 944 (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 527, 79 S. Ct. 437, 3 L. Ed. 2d 480 (1959) (internal quotation marks omitted)).

The county points out that among concerns mentioned by citizens and Board members during proceedings leading up to the adoption of Ordinance 4-2014 was the illegality of the possession and use of marijuana under federal law. Under the federal Controlled Substances Act it is still illegal to possess and consume marijuana. 21 U.S.C. §§ 812(c), sched. I (c)(10) (listing marijuana as a Schedule I controlled substance), 841(a)(1) (making it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance"). The county also points out that Board members and citizens were concerned with health and safety risks of marijuana, particularly as it relates to children.

MLM argues that marijuana's illegal status under federal law does not provide a reasonable ground for the county to prohibit marijuana land uses because there have been no "federal enforcement actions against businesses or government entities associated with adult use [of] marijuana in Washington State." Br. of Appellant at 24. It also points to *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), in which the Ninth Circuit Court of Appeals enforced a congressional appropriations rider prohibiting the United State Department of Justice from spending funds to prevent states' implementation of their own medical marijuana laws, remanding several criminal prosecutions for hearings

on whether the rider applied. The court observed that the spending rider did not provide

immunity from federal prosecution, however, stating,

> Congress currently restricts the government from spending certain funds
> to prosecute certain individuals. But Congress could restore funding
> tomorrow, a year from now, or four years from now, and the government
> could then prosecute individuals who committed offenses while the
> government lacked funding.

*Id.* at 1179 n.5.

MLM also points to proposed federal legislation, The Strengthening the Tenth

Amendment Through Entrusting States (STATES) Act, which would amend the

Controlled Substances Act to exempt marijuana from federal prosecution and

enforcement. S. 1028, § 2, 116th Cong. (1st Sess. 2019); H.R. 2093, § 2, 116th Cong.

(1st Sess. 2019). The Controlled Substances Act remains unchanged, however.

As for the health and safety risks that concerned Board members, MLM relies on

the declarations of its experts to argue that alcohol presents a greater harm than

marijuana. This court held in *State v. Dickamore*, however, that "so long as scientists

disagree about the effect[s] of marijuana, the legislature is free to adopt the opinions of

those scientists who view marijuana as harmful." 22 Wn. App. 851, 855, 592 P.2d 681

(1979) (rejecting an equal protection challenge to criminal prosecution for marijuana

possession); *see also State v. Brayman*, 110 Wn.2d 183, 193, 751 P.2d 294 (1988)

("[W]here scientific opinions conflict on a particular point, the Legislature is free to

13

adopt the opinion it chooses, and the court will not substitute its judgment for that of the Legislature.").

Moreover, in *Seeley v. State*, 132 Wn.2d 776, 806, 940 P.2d 604 (1997), in which a cancer patient challenged the then-illegality of marijuana use for medical purposes, the Supreme Court relied on case law holding that a challenge to a classification based on its underinclusiveness faces an especially high burden of proof. Such a challenger "must show that the governmental choice is 'clearly wrong, a display of arbitrary power, not an exercise of judgment'"—a heavy burden of proof that few challengers can overcome. *Id.* (internal quotation marks omitted) (quoting *Nat'l Org. For Reform of Marijuana Laws v. Bell*, 488 F. Supp. 123, 137 (D.D.C. 1980) (*NORML*) (quoting, in turn, *Mathews v. De Castro*, 429 U.S. 181, 185, 97 S. Ct. 431, 434, 50 L. Ed. 2d 389 (1976))). It continued:

> "A State may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed."

*Id*. (internal quotation marks omitted) (quoting *NORML*, 488 F. Supp. at 137).

Because these are reasonable grounds for classifying marijuana land uses as those prohibited, MLM does not demonstrate a violation of equal protection.

14

No. 36289-2-III
*Yakima County v. MLM Entertainment*

The summary judgment and warrant of abatement (as amended[5]) are affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.

---

[5] *See* CP at 1325-35.

15

No. 36289-2-III

FEARING, J, (concurring) — Five years ago, I attended a fundraising banquet for a drug court in Eastern Washington. Attendees included graduates of drug court, chemical dependency treatment providers, court administrators, lawyers, and judges. As is customary, a no-host bar was available for banquet guests. With payment, the alcohol flowed freely.

After dinner speakers included judges and court graduates, both of whom properly praised the accomplishments of drug court. One court graduate remarked, however: "Why are you serving alcohol here?" The banquet attendees, too blind to know the answer or too embarrassed to utter the answer, fell silent. The obvious answer was: alcohol is the drug of choice for people in power.

With the coming of age of and shifting of power to those who enjoy an occasional toke, Washington has moderately legalized marijuana and modestly rendered the product available to its citizenry. Some office holders even now inhale. But alcohol remains the only drug of choice for officials in some zones of Washington State such that, in those pockets, consumers may conveniently purchase alcohol, but not marijuana. Both are harmful. Alcohol kills more.

No. 36289-2-III

*Yakima County v. MLM Entertainment, et al.* (concurrence)

I concur in the opinion of the majority based on the underinclusivity principle.

*Mathews v. De Castro*, 429 U.S. 181, 185, 97 S. Ct. 431, 50 L. Ed. 2d 389 (1976); *Seeley v. State*, 132 Wn.2d 776, 806, 940 P.2d 604 (1997).

I CONCUR:

_____
Fearing, J.

2