IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CITY OF SELAH, a Washington, municipal corporation, | ) ) ) | No. 36793-2-III |
| Respondents, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STEVE OWENS and JANET OWENS, husband and wife, ant the marital community composed thereof, | ) ) ) ) | |
| Appellants. | ) ) | |

FEARING, J. — Property owners Steve and Janet Owens challenge on procedural

and substantive grounds the superior court's grant of a summary judgment motion in

favor of the city of Selah. The order declared an apartment complex to be a nuisance and

required abatement of the nuisance. Because no procedural obstacle precluded the city's

lawsuit for nuisance and because the undisputed facts established a nuisance, we affirm

the grant of summary judgment.

FACTS

Steve and Janet Owens own residential rental property, at 519 South First Street in

Selah, constructed in the 1920s. The property consists of five multi-family buildings

containing eighteen apartment units organized as 1-4, 5-6, 7-9, 10-13, 14-18 and two stand-alone units, 19 and 21. The multi-family dwellings likely result from merging smaller independent cabins. Each unit comprises a single story residence with an attic. The back of each unit includes an addition affixed after the original construction. Steve and Janet Owens rent the twenty units, complete with water, sewer, electricity, and gas, for $450 per month.

The original owners of the 519 South First Street complex built the housing before adoption of the Uniform Building Code or International Building Code. Thus no design requirements for structural adequacy existed at construction. Former owners also likely erected the back additions to each unit before adoptions of a code or at least before enforcement of a code by Yakima County or the city of Selah.

In 2016, the city of Selah issued citations for code violations to Steve and Janet Owens as a result of conditions at 519 South First Street. As a result, on November 1, 2016, Steve Owens signed a stipulated order of continuance in Selah Municipal Court, under which order he agreed that all property owned by him in Selah would comply with the city code. In the event of noncompliance, Owens would correct the violation within twenty days of notice from the city. The city of Selah would dismiss the pending citations if Owens avoided any further violations by October 31, 2017.

The events leading to this lawsuit begin with injuries to tenant Debra Redman. Debra and Robert Redman resided in unit 18 at 519 South First Street. On September 13,

2

2017, Debra Redman fell through a rotten floor in the residence. She could not free herself from between a door jamb and the toilet and bathtub. Her trapping constricted Redman's breathing. She summoned emergency responders.

Captain Andrew Wangler and a response team of the City of Selah Fire Department responded to Debra Redman's dispatch call. The team removed the door jamb, jack stud, and carpet in order to free Redman. In an incident report, Captain Wangler wrote:

> When the structural members of the door and carpet were removed it was noted that the floor had immense water damage and rotting away. The floor had about 1x1 inch hole in the sub floor to the ground with numerous soft spots on the sub floor throughout the bathroom and entry way to the bathroom. The sub floor also was wet and rotted on the entry way. It was also observed to have cockroaches residing with the residents. After all this was done the patient was moved onto a long board and 6 individuals used it as a lever to move the patient to the bed where she was able to regain her breath and refused transport to the hospital.

Clerk's Papers (CP) at 1140. Steve Owens thereafter served an eviction notice on Debra and Robert Redman.

On October 2, 2017, the city of Selah received a complaint from Debra Redman regarding the substandard living conditions of her apartment. In response, City Administrator Don Wayman, Code Enforcement Officer Erin Barnett, City Fire Marshal James Lange, and Director of Community Development and Building Official Jeffery Peters inspected the unit. Officials found the small dwelling dirty and cramped. They observed a hole with spongy flooring surrounding it covered by a linoleum piece. Black

3

timbers indicated rot.  Sheetrock in the restroom showed water damage.  Strand board replaced some of the sheetrock.  The area around the toilet and sink showed leakage and attempted repairs.

During the October 2, 2017 inspection, Building Official Jeffery Peters observed powder spread along window sills, countertops, door jams, and trim.  Debra Redmans' son stated the powder consisted of Comet cleaner and insect repellant.  Peters and Code Enforcement Officer Erin Barnett walked along the other units at 519 South First Street and noticed numerous violations of the International Property Maintenance Code.  The violations included deterioration of the outside of buildings, exposed electrical cords, sealed windows with flammable construction caulking, rotten sill plate, bowed siding, and rotten windowsills.

On returning to his city office, Building Official Jeffery Peters found Steve Owens waiting for him.  Owens questioned the presence of city officials at his property without his permission.  Peters informed Owens of the complaint.  Owens indicated that he knew the identity of the reporting resident and that he intended to evict the tenants of unit 18 because he could not repair the floor of the unit while the tenants resided in the apartment.  Owens asserted that Debra and Robert Redman permitted the apartment to fall into disarray.  He highlighted that, when the Redmans took possession in 2013, the unit had no water leakage, floor rot, or pest infestation.  The bathroom then had a door

4

and the shower had a shower curtain.  According to Owens, the Redmans failed to alert him to the apartment needing repairs or pest removal.

During the October 2 discussion, Jeffery Peters told Steve Owens that units at 519 South First Street had multiple violations of the International Property Maintenance Code, but added that he could not share the specific violations unless the city administrator so authorized him.  Owens replied that he would repair the units if provided a list of violations.

On October 31, 2017, at the review hearing for the 2016 charges for violations of the city code, the city of Selah claimed that Steve Owens violated the November 1, 2016 stipulated order of continuance because of the September 13, 2017 accident and injuries to Debra Redman.  Owens responded that he had since repaired the floor, door jamb, ceiling, and other defects in unit 18.  He also argued that Selah had given him no notice of any violations.  The municipal court continued the review hearing for twenty days for Steve Owens to demonstrate repairs to unit 18.

On November 16, 2017, the City of Selah filed the suit, pending before this court on appeal, against Steve and Janet Owens in Yakima County Superior Court.  The City alleged violations of the International Property Maintenance Code, as incorporated by the city code, at 519 South First Street.  In its lawsuit, the city of Selah asserted only one cause of action, that being nuisance.  Selah requested injunctive relief in the form of authorizing city staff to inspect the property, ordering Steve and Janet Owens to remedy

all codes violations, ordering demolishment of the buildings in the event that repairs were not feasible or economical, ordering vacation of the property by tenants during repairs, authorizing Selah to perform the repairs if the Owenses failed to do so, and authorizing Selah to file a lien on the property for any cost of repairs.

In its complaint, the city of Selah alleged that Steve and Janet Owens had taken no measures to correct the code problems or relocate the residents of the apartments to safe areas to address health and safety concerns. The city filed, with its complaint, declarations of Building Official Jeffery Peters, Selah Code Enforcement Officer Erin Barnett, and Fire Department Captain Andrew Wangler, with the September 13, 2017 incident report attached to Wangler's declaration.

On November 16, 2017, the superior court issued an order for Steve and Janet Owens to show cause, on December 1, as to why a preliminary injunction should not be decreed. In response, Steve and Janet Owens argued that unit 18 of 519 South First Street did not represent the condition of the remaining apartments. The Owenses also contended that the tenants caused the damage to unit 18 and that they sufficiently repaired the damage. Finally, the Owenses maintained that they remained willing to perform additional repairs if the city submitted a list, which the city had so far failed to do.

On December 1, 2017, trial court granted the city of Selah's request for a preliminary injunction. The order for injunction read:

6

1.  The City has established the existence of a clear legal and equitable right to enforce the terms of its adopted codes (including nuisance and zoning codes), and to expect Defendants to comply with the City's adopted codes.

2.  The City has further established a well-founded concern that Defendants have maintained a public nuisance in violation of the Selah Municipal Code 6.58, Public Nuisances, and the International Property Maintenance Code, which The City adopted by reference at Selah Municipal Code Chapter 11.02.

3.  The City has established that there are code compliance issues present on Defendants' property giving rise to concerns for structural integrity of building and for life and safety of its occupants.

4.  Defendants' violation of the City's properly adopted codes constitutes harm and injury to the City that is properly remedied by injunctive relief. In particular, suffering dangerous conditions, fire hazard, and pest infestation.

5.  Immediate and irreparable harm will result to the City if a Preliminary Injunction is not issued in this case as requested by the City. The continuing injury suffered by the City due to Defendants' violations of applicable code provisions is sufficient to justify the issuance of a preliminary injunction.

CP at 146.

The December 1 preliminary injunction required Steve and Janet Owens to permit the city of Selah to conduct an inspection of 519 South First Street. The inspection would determine whether repairs could correct the code violations or whether demolition of the buildings was the better course. The inspection would also decide whether safety concerns required that occupants of the units vacate the property. The trial court declined to temporarily remove tenants from the complex. The preliminary injunction read that if, after the inspection, Steve and Janet Owens do not agree with the conclusions reached by

7

the city of Selah, Selah should file a motion for the court to determine terms for the abatement of the nuisance.

On December 14, 2017, the city conducted an inspection of all units at 519 South First Street. Those participating in the inspection included Selah Building Official Roy Brons, Selah Code Enforcement Officer Erin Barnett, City Fire Marshal James Lange, Selah Consulting Engineer Mike Heit, mold consultant Daniel Orozco, the city of Yakima Building Code Manager Glenn Denman, Department of Labor & Industries Electrical Inspector Gary Gooler, and a Selah utility supervisor. Inspectors took hundreds of photographs of building conditions.

Because Steve and Janet Owens claim a dispute of fact exists as to whether the 519 South First Street apartments constituted a nuisance, we list the many defects found by inspectors on December 14. Numerous apartments within the complex had exterior concrete stairs, which lacked the required height and had sunk so that the steps slanted toward the building. These steps created a stumbling hazard.

All buildings sustained damage to exterior wood surfaces. The windows frames, cornices, and trim had peeling, chipped paint, rotten wood, and mold. The siding of buildings and the masonry joints between buildings had multiple cracks, rot, and exposed holes allowing entry of the elements. Buildings doors, with the exception of the two single family homes, maintained gaps at the bottom and along the doorframe, which

8

allowed entry of the elements and pests. Doors of the multi-family dwellings lacked deadbolt locks required by code.

Building windowsills at the 519 South First Street units suffered wear and rot that permitted entry of the elements. Some apartment units showed water damage around the windows. The inspectors encountered difficulty opening windows. Some windows were permanently shut with screws, paint, or boards. Even when inspectors removed these obstacles, they encountered problems opening the windows. The windows violated the fire code because of the inability of tenants to escape through the windows in the event of a fire.

All 519 South First Street buildings displayed signs of deterioration and failure or near failure of structural members. This evidence included sagging roofs, slanting floors and stoops, rotten exposed sill plate, bulged siding, and dangerous angles of repose of the buildings' exterior and interior walls. The foundations of all but one building experienced open cracks and breaks that allowed entry of rodents and other pests. The roofs of all structures were failing and admitted rain. The moisture created dampness and deterioration in the walls. Inspectors noticed numerous repairs to the ceilings and walls and water stains and spots. The majority of the buildings had unprotected overhangs that also allowed infiltration of weather elements. Inspectors could penetrate some overhangs with a finger because of rotten sheathing.

9

All complex buildings lacked gutters and downspouts. Some chimneys were missing metal caps to prevent the intrusion of weather. The majority of the multi-family structures did not contain the required screen doors.

City inspectors found the majority of 519 South First Street units unclean with dirty floors, walls, and windows. Some units had different levels of flooring and multiple transitions in flooring between rooms that evidenced the addition of subfloor material without permits. Bathroom walls and ceilings of all units showed signs of water damage with soft, bulging, cracked, and parted sheet rock. The showers and baths contained mold and mildew. The showers and baths also lacked caulking needed to keep water from the subfloor, walls, and ceilings. The bathroom floors within the dwelling units ranged in degree of sponginess. Some bathroom floors sagged.

Each unit at 519 South First Street showed signs of failed plumbing fixtures and pipes. Each apartment sustained water damage beneath the kitchen and bathroom sinks. Each apartment had undergone repairs of the plumbing without the needed permits.

Apartment interior walls and ceiling surfaces had soft, sagging, cracked, water stained, and dilapidated sheetrock. Most units showed repairs of sheet rock with varying sizes of newer pieces. The repairs formed mudded and unsanded joints. Repairs also formed skim coatings of plaster and caulking used to patch or fill holes in the walls and ceilings.

Cockroaches and other insects infested all apartments. Water heaters showed

signs of water damage. Two of the units lacked operational heating facilities. Tenants in

these two apartment used portable heaters. Many heating units were missing

components, protective covers, grates, and exhaust covers.

An inspector smelled a strong odor of natural gas in two units, which led to the

finding of gas leaks. Electrical breakers in four residences lacked labels. Electrical

panels lacked needed clearance. One unit had a burned electrical outlet and numerous

units lacked electrical plug plates. Each apartment had missing or inoperable fire

detectors.

Selah Consulting Engineer Mike Heit performed extensive calculations of the load

bearing capacity of individual units' walls and roofs. His calculations confirmed that the

roof and walls of all units did not comply with load bearing requirements. As a result,

exterior walls bulged. Every roof lacked sufficient ventilation. Attic and crawlspaces

contained mold.

On January 9, 2018, the city of Selah issued a notice of violation and order of

correction, pursuant to Selah Municipal Code (SMC) 6.75.050, to Steve and Janet

Owens. The order was not a court order. The notice claimed that multiple conditions at

519 South First Street violated the 2015 International Property Maintenance, Building,

Residential, Plumbing, Mechanical, and Fire and Electrical Codes. Selah attached, to the

notice, 487 pages of reports outlining the inspections of the property and defects in the

property, including reports from the city building official, the city fire marshal, a structural engineer, a mold consultant, the city of Yakima code enforcement officer, and a Department of Labor & Industries electrical inspector. Hundreds of photographs of the building conditions were also attached.

The January 9, 2018 notice and order gave Steve and Janet Owens thirty days to provide a letter of intent to repair the buildings or, in the alternative, to submit a demolition permit for the buildings. In the event the Owenses chose to repair the property, the order directed them to, within one hundred and twenty days, hire a licensed structural engineer and provide "a detailed structural repair plan, which includes structural calculations and plans, and addresses all identified deficiencies within the attached reports" to the City of Selah Community Development and Planning Division. CP at 214. The city's structural engineer would review the plans. Regardless of the option chosen by the Owenses, the order instructed them to submit an acceptable relocation plan for the relocation of tenants within thirty days. On a request from the retained structural engineer, Selah would consider extending the one hundred and twenty day compliance deadline.

The January 9, 2018 city notice of violation and order advised Steve and Janet Owens that they could file an administrative appeal pursuant to SMC 6.75.090(a) within ten calendar days after receipt of the notice should they feel aggrieved by the order. The first step of the appeal would be before the Selah City Council. The notice of violation

12

warned that, if the city of Selah took steps to abate the nuisance caused by the code violations, the city would impose the costs of abatement, including the city's administrative costs, against the property.

On January 19, 2018, Steve and Janet Owens timely filed an administrative appeal of the notice of violation and order to comply issued by the city. At some unidentified day in January 2018, the Owenses commenced some repairs at 519 South First Street. On January 29, 2018, the city of Selah issued a stop work order. On February 7, 2018, City Attorney Robert Noe advised the Owenses that work must cease until submittal of a repair plan. Noe advised against piecemeal repairs that could hinder structural repairs required under the plan.

On February 13, 2018, the parties entered an agreed order in Steve and Janet Owens' appeal, before the Selah City Council, of the notice of violations and order of noncompliance. Under the agreed order, the city of Selah removed its requirement that Steve and Janet Owens submit a relocation plan for their tenants. The parties also postponed the appeal hearing before the city council to allow the Owenses time to complete review of the findings in the January 9 city order of noncompliance. The agreed court order declared:

> On or before April 16, 2018, Defendants [Steve and Janet Owens] shall provide a Letter of Intent to the City Community Development and Planning Division, indicating Defendants' intent to (a) repair the subject property, (b) submit an application for a demolition permit, or (c) move forward with the appeal of the Notice of Violation and Order of Correction.

CP at 184.  The order extended any deadline to submit a repair plan to June 13, 2018.

The order did not mention the pending nuisance and abatement lawsuit filed by the city

of Selah against Steve and Janet Owens, let alone postpone the lawsuit.  The order

concluded:

> 5.  If the Defendants [Steve and Janet Owens] choose to move
> forward with the appeal of the Notice of Violation and Order of Correction,
> upon receipt of the Defendants' Letter of Intent, the City's counsel shall
> note a hearing before the City Council.

CP at 185.

On April 16, 2018, Steve and Janet Owens delivered a letter of intent, to repair the

buildings at 519 South First Street, to the city of Selah.  The letter informed the city that

the Owenses had retained Tim Bardell, PE.  In the letter, the Owenses sought to reserve

the right to abandon the repair plan and pursue demolition if, during the course of repairs,

they discovered that the cost will be more burdensome than anticipated.  The letter added

that, by June 13, 2018, Tim Bardell would submit a structural repair plan.  Finally, the

letter noted the varying needs of repair for each unit such that Bardell's repair plan would

need to address one unit at a time, within a broader plan covering all of the structures.

On June 13, 2018, Steve and Janet Owens submitted a repair plan prepared by Tim

Bardell.  The plan contained a "conceptual repair sequence" with a "unit by unit in a

progressive manner" approach.  CP at 758.  Under the plan, the Owenses would proceed

14

with repairs of unit 18 first.  Thereafter, the Owenses would determine whether to

proceed with additional repairs or demolition.  The letter concluded,

> The attached general plans apply for the permit for Unit 18.  The
> plans for Unit 17 and subsequent units will be similar.

CP at 759.

On June 15, 2018, the City of Selah responded with a letter complaining that the

repair plan lacked significant structural analysis and repairs based on such an analysis.

Selah Consulting Engineer Mike Heit commented:

> the plan might be feasible and could serve as a basis for getting the
> repairs started, which is the objective sought by the parties, but only if the
> structure as a whole is subject to inspection and analysis.  The unit by unit
> approach suggested will not suffice to address structural component issues.

CP at 770.  Mike Heit added:

> I appreciate and generally agree with Mr. Bardell's approach to
> preparing a repair plan for the buildings, but the document submitted is
> merely an outline of the procedure he intends to follow for gathering the
> information needed to prepare a detailed repair plan, and not an actual
> repair plan.
> As stated in the original structural evaluation, to fully determine the
> extent of the decay it will require substantial exploratory inspections, likely
> removing a significant amount of the roofs, floors, and wall coverings
> down to the bare framing.  It was our understanding that this exploration
> was already to have been completed, and a detailed repair plan and
> structural calculation package submitted at this time, verifying the
> adequacy for all existing and new structural framing members.
> Although I would find it acceptable to expose all the framing in one
> unit for evaluation purposes to determine if repairing the building is cost
> effective, it is not possible to adequately evaluate all the structural needs for
> the building based of [sic] one unit.  If the intent is to repair a single unit at
> a time, the engineer must provide a structural evaluation report

documenting that the units are independent structures, with the necessary vertical and lateral structural elements to withstand code loading requirements independently of the adjacent units. Then the repair plan can be evaluated based off a unit by unit basis. If the units are not independent structures, and share common structural framing members for vertical or lateral support, then the repair plan must address an entire building at one time.

CP at 770 (emphasis omitted). Selah's June 15 responding letter ended: "the entire structure must be evaluated, including structural calculations, and repaired and cannot be processed unit by unit." CP at 771. The letter imposed a seventy-two hour deadline for a response regarding whether the Owenses agreed to complete the evaluation. Otherwise, Selah would proceed to abate the structures as nuisances.

On June 16, 2018, counsel for Steve and Janet Owens responded to the city of Selah. The attorney's letter sought clarification of the city's position and indicated that the Owenses would respond to the June 15 letter after discussion with Tim Bardell. The letter also expressed surprise at the city's objections to a unit by unit approach.

Tim Bardell later disagreed with Selah Consulting Engineer Mike Heit regarding whether repairs could be conducted unit by unit. On June 27, 2018, Steve and Janet Owens sought clarification regarding the city's position as to a unit by unit plan. On July 24, 2018, counsel for the Owenses sent an e-mail expressing the Owenses' intent to begin repairs and submit permit applications. On July 25, counsel for the city of Selah informed the Owenses that the City planned to submit a motion for summary judgment in the pending superior court nuisance suit.

PROCEDURE

We turn from the proceeding before the Selah City Council and return to the nuisance lawsuit brought in superior court that is now on appeal. On July 27, 2018, the city of Selah filed a motion for summary judgment in this lawsuit. The motion sought an injunction and declaratory order that would allow Selah to enter 519 South First Street and abate the nuisance. The motion also sought imposition of costs of abatement against Steve and Janet Owens. The city argued that a public nuisance existed as defined by chapter 7.48 RCW and the Selah Municipal Code.

Selah Building Official Jeffery Peters filed a declaration in support of the motion for summary judgment. The declaration attached the numerous inspection reports that led to the notice of violation. The declaration affirmed the accuracy of the reports.

Steve and Janet Owens filed a cross motion for summary judgment seeking enforcement of the February 13, 2018 agreed order before the Selah City Council, which they argued formed a settlement agreement. The Owenses maintained that, contrary to the agreed order, the city of Selah interfered with their desire to perform repairs. Alternatively, the Owenses argued that the Washington Land Use Petition Act (LUPA), chapter 36.70C RCW, precluded the superior court from exercising jurisdiction over the dispute because, with the pending appeal before the city council, Selah had yet to issue a final land use decision.

Steve and Janet Owens's consulting engineer Tim Bardell signed a declaration in opposition to Selah's summary judgment motion. In his declaration, Bardell contested the severity of the code violations asserted by Selah. But he did not identify any alleged violations with which he disagreed. Bardell disputed Selah's implication that the buildings at 519 South First Street were unsafe. Although he agreed that the buildings needed repairs, he asserted that tenants could continue to live in the apartments. Bardell lamented that the demands of Selah for extensive repairs or demolition would eliminate affordable housing for low income citizens.

Steve and Janet Owens filed declarations from tenants in opposition to Selah's motion for summary judgment. The tenants averred that they lacked any concerns about the conditions present in their respective rental apartments. For example, tenant Guillermina Naranjo stated that "I have never had a problem with roaches/bugs or mice/rats," and "I have never had any issues with water leakage." CP at 1, 2. Tenant Asya Carter declared that modifications to units were readily permitted by Steve Owens.

The trial court granted Selah's summary judgment motion and denied Steve and Janet Owens' cross-motion for summary judgment. In so ruling, the court determined that the February 13, 2018 agreed order did not constitute an agreement to end the superior court lawsuit. The trial court ruled that LUPA did not bar the court action brought by the city of Selah. The court reasoned that Tim Bardell's declaration did not create a question of fact as to the presence of a nuisance.

18

The superior court entered a written order granting summary judgment for declaratory judgment, a permanent injunction, and an order of abatement. The order lists a number of undisputed facts:

> 1). Conditions exist at defendants' Property constituting numerous violations of the property maintenance, building, plumbing, fire, and mechanical codes;
> 2). Conditions exist giving rise to concerns about the structural integrity of the buildings;
> 3). Conditions exist that rise to the level of being dangerous and unsafe; and
> 4). These conditions are injurious to the public.

CP at 926-27. Based on these facts, the trial court entered a declaratory judgment that a public nuisance existed at 519 South First Street. The court issued a permanent injunction preventing and prohibiting Steve and Janet Owens from maintaining, permitting, or allowing the public nuisances to continue to exist. Finally, the order directed the Owenses to abate the nuisance.

The order on summary judgment stayed the order of abatement for three months. The order directed that:

> [The Owens] shall prepare a detailed structural repair plan (which includes structural calculations and plans, and addresses all identified deficiencies within the reports attached to the January 9, 2018 Notice of Noncompliance and Order to Comply issued by the City of Selah) and which addresses each building and the structural concerns for each building (not a unit by unit approach) and defendants shall take substantial steps toward effectuating repairs to the structures on the Property.

19

CP at 927-28 (alterations in original). According to the order, if the Owenses failed to submit the repair plan or take steps toward repairing the rental property, the city of Selah could request lift of the stay and implementation of abatement.

Three months later the City of Selah filed a motion to lift the stay and to permit abatement. Selah claimed that Steve and Janet Owens had taken no substantial steps toward a repair of the structures. In response, the Owenses contended that Selah had refused to issue building permits, which rendered their ability to commence repairs and comply with the order impossible. The Owenses requested that the court order the city to issue building permits.

The trial court scheduled an evidentiary hearing on the question of whether Steve and Janet Owens had complied with the court order. After the hearing, the court found that the Owenses had failed to comply with the order. The court lifted the stay order and reinstated the order of abatement.

## LAW AND ANALYSIS

On appeal, Steve and Janet Owens raise similar arguments to those asserted in opposition to Selah's summary judgment motion. They contend that the superior court lacked jurisdiction over the dispute because the city of Selah had failed to follow the procedures required by LUPA. They contend that the city, either by reason of the agreed order before the Selah City Council or by reason of constitutional principles, needed to

20

continue with the process before the city council rather than reinstate this lawsuit. They also contend issues of fact exist as to the presence of a nuisance at 519 South First Street.

On appeal, Steve and Janet Owens raise for the first time, in their reply brief, theories of equitable estoppel and election of remedies as preclusions to relief for Selah. We decline to address these theories, because we do not entertain an argument raised for the first time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Steve and Janet Owens fail to include issue statements attended to their assignments of error as required under RAP 10.3(a)(4). We nonetheless consider the merits of the Owens' arguments because of the absence of any compelling reason to the contrary. *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

Land Use Petition Act

Steve and Janet Owens contend that the trial court prematurely exercised appellate jurisdiction over a code enforcement proceeding governed by the Land Use Petition Act. They argue that, by commencing an action for declaratory judgment and injunctive relief, the city of Selah unilaterally terminated the Owens' right to an administrative process to challenge the January 9, 2018 notice of noncompliance and order to comply. In so arguing, the Owenses characterize this lawsuit as a code enforcement proceeding and the January 9 notice and order as a land use decision covered by LUPA. The Owenses depict

21

the summary judgment motion as being based on the January 9, 2018 issuance of an order of abatement.

We disagree with Steve and Janet Owens because, although the city's administrative action and this lawsuit cover some of the same subject matter, this lawsuit does not seek to enforce the notice of noncompliance. The city of Selah issued the notice months after filing this lawsuit, and thus the notice was incidental to the suit. Selah brought the pending lawsuit in order to abate a nuisance. The summary judgment motion did not seek to enforce or overturn a land use decision issued by Selah. LUPA does not preclude a government entity from abating a nuisance in superior court even if the entity has other pending administrative action.

We note that LUPA actions generally entail a property owner challenging a city's land use decision, not the city seeking to enforce a statute or ordinance. The purpose of LUPA is to require a landowner or a neighbor to the landowner to exhaust administrative remedies, not to require that a government entity limit enforcement of its building code in an administrative process when the government holds other options.

We find our response to Steve and Janet Owens' first assignment of error solely in the language of the LUPA. We quote, in numerical order, pertinent sections of the act.

> Unless the context clearly requires otherwise, the definitions in this section apply throughout this chapter [36.70 RCW (LUPA)].
> . . . .

22

(2) "Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:

(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property; excluding applications for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses;

. . . ; and

(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. However, when a local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction, a petition may not be brought under this chapter.

RCW 36.70C.020.

(1) This chapter replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions.

RCW 36.70C.030.

(1) Proceedings for review under this chapter shall be commenced by filing a land use petition in superior court.

(2) A land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court and timely served on the following persons who shall be parties to the review of the land use petition:

(a) The local jurisdiction, which for purposes of the petition shall be the jurisdiction's corporate entity and not an individual decision maker or department[.]

RCW 36.70C.040.

A land use petition must set forth:
(1) The name and mailing address of the petitioner;

23

(2) The name and mailing address of the petitioner's attorney, if any;

(3) The name and mailing address of the local jurisdiction whose land use decision is at issue;

. . . .

(7) *A separate and concise statement of each error alleged to have been committed*[.]

RCW 36.70C.070 (emphasis added).

(1) A petitioner or other party may request the court to stay or suspend an action by the local jurisdiction or another party to implement the decision under review. The request must set forth a statement of grounds for the stay and the factual basis for the request.

(2) A court may grant a stay only if the court finds that:

(a) The party requesting the stay is likely to prevail on the merits;

(b) Without the stay the party requesting it will suffer irreparable harm;

(c) The grant of a stay will not substantially harm other parties to the proceedings; and

(d) The request for the stay is timely in light of the circumstances of the case.

(3) The court may grant the request for a stay upon such terms and conditions, including the filing of security, as are necessary to prevent harm to other parties by the stay.

RCW 36.70C.100.

The quoted provisions of LUPA show that the legislature did not intend the act to apply to the city of Selah's suit to abate a nuisance regardless of whether the city earlier issued a notice of noncompliance and Steve and Janet Owens appealed the notice. Selah did not seek judicial review of any land use decision pursuant to RCW 36.70C.030. RCW 36.70C.040 demands that the petitioner join the local jurisdiction as a party to the petition, which language makes no sense in an action initiated by the local jurisdiction.

24

The city claims no error in any of its land use decisions, while the LUPA petition must include an assignment of an error under RCW 36.70C.070(7). Even if LUPA applied, RCW 36.70C.100 would allow the city to take steps to enforce its code unless the Owenses applied for a stay.

LUPA provides "relief *from* a land use decision." *Durland v. San Juan* County, 182 Wn.2d 55, 63, 340 P.3d 191 (2014) (emphasis added). To repeat, the city of Selah does not seek relief from one of its land use decisions.

Steve and Janet Owens cite two Washington cases for the proposition that the city of Selah may not proceed with this lawsuit until they have exhausted the administrative process: *Asche v. Bloomquist*, 132 Wn. App. 784, 133 P.3d 475 (2006) and *Grandmaster Sheng-Yen Lu v. King County*, 110 Wn. App. 92, 38 P.3d 1040 (2002). In *Grandmaster Sheng-Yen Lu v. King County*, this court dismissed a declaratory judgment action that asked for a ruling that King County must issue a conditional use permit before landowners could mine property. This court held that LUPA controlled the suit and, since the county was still deciding whether to grant the permit, the lawsuit was premature.

In *Asche v. Bloomquist*, Richard and Helen Asche filed suit claiming that Kitsap County erroneously granted Melany Bloomquist and Steven Chobot a building permit. The Asches sought injunctive relief based on a public or private nuisance theory and a writ of mandamus. The Asches contended that Kitsap County made a calculation error

25

when granting the permit and this error created a zoning ordinance violation. This court affirmed the trial court's dismissal of the claims as barred by LUPA's procedural requirements. This court observed that the Asches' public nuisance claim depended entirely on finding the building permit violated the zoning ordinance.

*Asche v. Bloomquist* and *Grandmaster Sheng-Yen Lu v. King County* lack relevance to the city of Selah's abatement lawsuit. The challengers in both decisions sought to challenge government action or the lack of action. The city of Selah does not seek to overturn or interfere with any land use decision. If a private citizen grounds a nuisance claim on a land use decision, the plaintiff must first exhaust remedies available under LUPA. *Grandmaster Sheng-Yen Lu v. King County*, 110 Wn. App. 92, 100, 38 P.3d 1040 (2002); *Asche v. Bloomquist*, 132 Wn. App. 784, 792; *Ward v. Board of County Commissioners, Skagit County*, 86 Wn. App. 266, 270-71, 936 P.2d 42 (1997). LUPA does not bar nuisance claims that do not depend on the validity of a land use decision. *Asche v. Bloomquist*, 132 Wn. App. 784, 800.

Due Process

Steve and Janet Owens highlight that the city of Selah issued a notice of noncompliance and order to enforce its city code. Under the code, the Owenses enjoyed the right to appeal the notice and order and the attended right to have the city council determine the validity of the notice and order. In turn, the Owenses had the prerogative to appeal any decision of the city council to the superior court. SMC 6.75.090 and .095.

26

Steve and Janet Owens complain that the city's reactivation of this lawsuit by filing a

summary judgment motion and the trial court's grant to the city of relief breached the

Owenses' right to appeal the notice of noncompliance and thereby breached their due

process rights.

The Selah Municipal Code, on which Steve and Janet Owens rely, does not

confine the city of Selah to the code procedures. Chapter 6.75 of the Selah Municipal

Code governs enforcement of building codes. SMC 6.75 states that "The purpose of this

chapter is to establish an efficient process for enforcement of code violations." SMC

6.75.010. Pursuant to SMC 6.75.020:

> The procedures set forth in this chapter *shall be utilized* to enforce
> violations of this code; as such violations are described within the code.
> *The remedies found in this chapter are cumulative to and are in addition to
> any other remedy already specified within this code*.

(Emphasis added.)

Steve and Janet Owens focus on the term "shall" used in the first sentence

of section .020 and, from that word, characterize the administrative process as

mandatory. Nevertheless, SMC 6.75.050(d) provides for the issuance of a notice

of violation, stating in part:

> after investigation, the code enforcement officer *may* serve a notice
> of violation and order upon the owner, occupant, tenant, manager, agent, or
> other person responsible for the condition

(Emphasis added.)

27

Other provisions of the Selah Municipal Code conflict with a characterization of the administrative process as mandatory or as the sole process by which the city of Selah may enforce the building code. SMC 6.75.100 addresses "Additional Relief – Injunction – Abatement." This section supports our conclusion that the city of Selah may initiate alternative processes to enforce the building code. The ordinance reads:

> The code enforcement officer may seek legal or equitable relief to enjoin any acts or practices and abate any condition that constitutes or will constitute a violation of this code. . . . The remedies provided in this chapter are cumulative and shall be in addition to any other remedy provided by law.

SMC 6.75.100(b). In addition, SMC 11.04.050 and SMC 6.58.280 govern building code violations. These two ordinances also declare that enforcement under the municipal code is not the exclusive method for enforcement. SMC 11.04.050 provides:

> This title and its enforcement provisions are cumulative and in addition to other methods by which the city may seek enforcement, including the provisions of Chapter 6.75, Code Enforcement.

SMC 6.58.280 reads:

> The city may seek to enforce the provisions of this chapter, *enjoin or abate any nuisance* identified in this chapter, and impose monetary penalties against agents or property owners maintaining nuisances identified in this chapter consistent with Chapter 6.75 of this code, Code Enforcement.

(Emphasis added.)

Steve and Janet Owens also contend that the city of Selah failed to utilize an emergency process under SMC 6.75.080. The ordinance declares:

28

> Whenever any use or activity in violation of this code threatens the health and safety of the occupants of the premises or any member of the public, the code enforcement officer *may* issue an emergency order.

(Emphasis added.) Thus, the ordinance does not require that the city employ the emergency procedure.

Our ruling that the city of Selah did not violate its municipal code by reactivating the abatement lawsuit does not fully resolve Steve and Janet Owens' due process assignment of error. The Owenses argue that an administrative agency's failure to follow its own procedures violates the constitution when (1) the agency violates minimal constitutional requirements in violation of procedural of procedural due process, or (2) its resulting decision is so arbitrary and capricious that it amounts to a violation of substantive due processes. The Owenses cite *Nieshe v. Concrete School District*, 129 Wn. App. 632, 641, 127 P.3d 713 (2005) for this contention.

While Steve and Janet Owens correctly cite the principle of law, they fail to analyze how the conduct of the city of Selah contravenes the principle. The Owenses identify no minimal constitutional requirement of procedural due process allegedly breached. They articulate no argument of Selah's decision being arbitrary and capricious.

Steve and Janet Owens also contend that an administrative body must follow its own rules and regulations when it conducts a proceeding which could result in depriving an individual of some benefit or entitlement. They cite *Ritter v. Board of Commissioners of Adams County Public Hospital District No. 1*, 96 Wn.2d 503, 507, 637 P.2d 940

29

(1981) and *Christensen v. Terrell*, 51 Wn. App. 621, 627, 754 P.2d 1009 (1988). But the Washington decisions entail a violation of agency rules when the agency itself conducts the hearing, not when the agency seeks relief before a superior court. Steve and Janet Owens do not contend that the superior court process did not afford them sufficient notice and an opportunity to be heard. Presumably the superior court permitted the Owenses to forward all arguments available to oppose the city of Selah's summary judgment motion and request for abatement.

Continuance Agreement

On February 13, 2018, the city of Selah and Steve and Janet Owens entered an agreed order continuing the Owenses' appeal of the notice of violation to the Selah City Council. The order postponed the hearing before the city council and gave the Owenses time to hire a structural engineer and submit a plan to repair the defects at 519 South First Street. The Owenses now argue that the agreed order constituted a settlement agreement that precludes Selah from proceeding with its nuisance suit in superior court. Along these lines, the Owenses contend that, since they submitted a repair plan pursuant to the agreed order, the city must allow them to proceed with the repairs under the plan rather than demand abatement.

A stipulation agreement signed and subscribed by the attorneys representing the parties forms a contract and its construction is governed by the legal principles applicable to contracts. *Allstott v. Edwards*, 114 Wn. App. 625, 636, 60 P.3d 601 (2002). A

30

contract is formed only if the parties manifest to each other their mutual assent to the same bargain at the same time. *Pacific Cascade Corporation v. Nimmer*, 25 Wn. App. 552, 555-56, 608 P.2d 266 (1980). Washington follows the objective manifestation theory of contracts. Under this approach, courts attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

We agree with the trial court that the agreed order did not form a contract that resolved this lawsuit now on appeal. The order only showed the parties' agreement to a scheduling order for Steve and Janet Owens appeal to the city council, including the grant of time to the Owenses to submit a repair plan to Selah. The order did not read that submission of a repair plan terminated Selah's option to litigate. The order did not compel Selah to approve any repair plan submitted by Steve and Janet Owens, regardless of objections that Selah staff might have to the plan.

The agreed order allowed Steve and Janet Owens to proceed with their appeal before the Selah City Council in the event they were not satisfied with the city's response to their submitted plans. The Owenses never exercised this right.

Nuisance and Abatement

Steve and Janet Owens contend that a dispute of facts exists as to whether they created a public nuisance. They also contend that the trial court erred in issuing an

31

injunction.

In response, the city of Selah maintains that this court reviews the issuance of an injunction under an abuse of discretion standard. We disagree under the setting of this appeal. Generally this court reviews a trial court's decision to grant an injunction and its decision regarding the terms of the injunction for abuse of discretion. *Kucera v. Department of Transportation*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000). Nevertheless, when the trial court issued an injunction when granting a summary judgment motion, we review the decision de novo. *Hoggatt v. Flores*, 152 Wn. App. 862, 868, 218 P.3d 244 (2009); *Mains Farm Homeowners Association v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

We review the trial court's decision under the standard principles of summary judgment. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Ranger Insurance Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008); *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974).

An affidavit does not raise a genuine issue for trial unless it sets forth facts evidentiary in nature—that is information as to what took place, an act, an incident, a

reality as distinguished from supposition or opinion. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988), *abrogated on other grounds by Mikkelsonv. Public Utility District No. 1 of Kittitas County*, 188 Wn.2d 516, 404 P.3d 464 (2017); *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991). A fact is an event, an occurrence, or something that exists in reality. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d at 359.

A party opposing a motion for summary judgment may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Likewise, a party may not rely on having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d at 13. Instead, the nonmoving party must set forth specific facts that sufficiently rebut the moving parties' contentions and disclose that a genuine issue as to a material fact exists. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d at 13. Ultimate facts or conclusions of fact are insufficient; conclusory statements of fact will not suffice. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60 (1988).

Chapter 7.48 RCW codifies Washington's nuisance law and classifies the various forms of nuisance, but the vagueness of the statutory language creates a need for a reviewing court to rely more on case law than the language of the statutes. RCW 7.48.010 awkwardly reads:

> Whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance and the subject of an action for damages and other and further relief.

RCW 7.48.120 further defines "nuisance" as:

> Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency. . . ; or in any way renders other persons insecure in life, or in the use of property.

RCW 7.48.130 defines a public nuisance:

> A public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal.

RCW 7.48.140 lists a number of public nuisances, none of which control our appeal.

The city of Selah contends that conditions at Steve and Janet Owens' rental property violated state law and city ordinances and thereby constituted a nuisance per se. Although we would affirm the grant of Selah's summary judgment motion even without the nuisance being classified as per se, we agree.

Violation of a statute or ordinance can be a nuisance per se. *See generally Morin v. Johnson*, 49 Wn.2d 275, 278-79, 300 P.2d 569 (1956); *ABC Holdings, Inc. v. Kittitas County*, 187 Wn. App. 275, 285, 348 P.3d 1222 (2015); *Littlefair v. Schulze*, 169 Wn. App. 659, 669-71, 278 P.3d 218 (2012). In *Littlefair v. Schulze*, the court declared a fence to be a nuisance per se because its siting inside an easement violated the county zoning code. *Littlefair v. Schulze*, 169 Wn. App. 659, 669-71. We are not sure if there is

34

a distinction between a nuisance per se and a nuisance as a matter of law, but code violations can also be a nuisance as a matter of law. *Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 286, 337 P.3d 328 (2014).

The Selah Municipal Code provides that the following constitute a nuisance:

> (1) Doing an unlawful act, or omitting to perform a duty, or suffering or permitting any condition or thing to be or exist, which act, omission, condition or thing either:
> (A) Annoys, injures or endangers the comfort, repose, health or safety of others,
> . . . .
> (E) In any way renders other persons insecure in life or the use of property, or
> . . . .
> (2) *Any violation of any city development regulation, zoning or other land use ordinance, licensing ordinance, or public health ordinance*[.]

SMC 6.58.010(a) (emphasis added). The Selah code also references dangerous buildings.

SMC 6.58.080 declares:

> Any dangerous building . . . or other structure [is] declared to be [a] nuisance.

SMC 6.58.240 reads:

> All buildings designated as unfit for human occupation in the city are declared to be nuisances.

The inspection report completed by Jeffery Peters detailed violations including sunken steps, damage to exterior wood surfaces, permanently shut windows, peeling paint, rotted window frames, siding cracks and rot, holes in siding, gaps in doors, missing deadbolt locks, water damage, deterioration of structural members, sagging roofs,

slanting floors and stoops, rotten exposed sill plate, bulged siding, dangerous angles of repose of the buildings' exterior and interior walls, cracks in the foundation, failing roofs, dampness in interior walls, water stains on ceilings and walls, unprotected overhangs, rotten sheathing, missing gutters and downspouts, missing screen doors, filthy premises, different levels of flooring and multiple transitions in flooring between rooms, bulging and cracked sheet rock, mold and mildew in showers and baths, missing caulking around showers and baths, spongey bathroom floors, failed plumbing fixtures and pipes, water damage beneath the kitchen and bathroom sinks, varied sizes of sheetrock, holes on walls awkwardly patched with plaster and caulking, water damage to water heaters, units with inoperable heating facilities, missing components to heating units, natural gas leaks, burned electrical outlets, missing electrical plug plates, and missing or inoperable fire detectors. Selah Consulting Engineer Mike Heit performed extensive calculations of the load bearing capacity of each unit's walls and roofs. His calculations confirmed that the roof and walls of all units did not comply with load bearing requirements. As a result, exterior walls bulged. Every roof lacked sufficient ventilation. Attic and crawlspaces contained mold. As a result of the defects, weather elements seeped into each unit. Each unit suffered infestations of cockroaches and other insects. Peters, not surprisingly, declared that the apartments at 519 South First Street had numerous code violations.

We conclude that the deteriorating and unsafe conditions at 519 South First Street constitute a nuisance regardless of whether the circumstances constitute a nuisance per

se.  A building may become a nuisance by virtue of its inherent unsafety.  *See generally Pahl v. Ribero*, 193 Cal. App. 2d 154, 14 Cal. Rptr. 174 (1st Dist. 1961); *McIntosh v. Goodwin*, 40 Tenn. App. 505, 292 S.W.2d 242, 251 (1954); 58 AM. JUR. 2D *Nuisances* § 129 (2020).  A building that creates a public fire hazard is a public nuisance.  *City of Jackson v. Morley*, 606 F.Supp. 434, 436-38 (S.D. Miss. 1985); *Vedder v. County of Imperial*, 36 Cal. App. 3d 654, 661, 111 Cal. Rptr. 728 (4th Dist. 1974); 58 AM. JUR. 2D *Nuisances* § 129 (2020).  When a building creates a hazard to health, safety, comfort, or welfare, a nuisance exists as a matter of law, which may be abated by the government.  *LJD Properties, Inc. v. City of Greenville*, 753 S.W.2d 204, 207 (Tex. App. Dallas 1988); 58 Am. Jur. 2d *Nuisances* § 129 (2020).  If dangerous to persons or property because of its age and dilapidated condition, a building may be a public nuisance, which, under some circumstances, may be summarily removed and destroyed.  *Beauchamp v. New York City Housing Authority*, 12 N.Y.2d 400, 405-06, 190 N.E.2d 412, 240 N.Y.S.2d 15 (1963); *City and County of Honolulu v. Cavness*, 45 Haw. 232, 364 P.2d 646, 648-51 (1961); 58 AM. JUR. 2D *Nuisances* § 129 (2020).

A decision from Hawai'i comes closest in facts to Steve and Janet Owens' appeal.  In *City and County of Honolulu v. Cavness*, 45 Haw. 232 (1961), the state high court affirmed the trial court's finding of a nuisance and order demanding that the property owner demolish a building, despite the owner's protest of a hardship.  The forty-year old building experienced split posts supporting the structure.  The posts also suffered termite

37

damage.  Some posts experienced buckling.  Joists and interior walls faced termite

damage and rot.  Flooring underwent deterioration.  The electrical system had defects.

The building inspector feared a building collapse.  The court rejected, as irrelevant, the

property owner's highlighting that no witness ventured an opinion as to when the

building might collapse.

Steve and Janet Owens rely on *Greenwood v. Olympic, Inc.*, 51 Wn.2d 18, 21, 315

P.2d 295 (1957) to contend that a municipal ordinance may not make a thing a nuisance,

unless it is in fact a nuisance.  The Owenses contend that, even if the city code declares

their buildings a nuisance, the underlying conditions at the property show otherwise.  We

disagree.  The undisputed underlying conditions established unsafe conditions.

Steve and Janet Owens emphasize that their structural engineer denied any code

violations.  Nevertheless, Tim Bardell, in his declaration, contested the severity of the

violations, not the existence of violations.  Tim Bardell also declared that he disagreed

that the property at 519 South First Street was unsafe.  Although Bardell recommended

repairs, he asserted that conditions remained livable.  Nevertheless, Bardell did not

dispute any of the extensive findings of the underlying unsafe conditions found at the

property by the city of Selah.  He did not dispute the presence of extensive mold, rot,

water damage, holes, gaps, bulging walls, sunken steps, permanently shut windows,

missing locks, deterioration of structural members, sagging roofs, cracks in the

foundation, failed plumbing fixtures and pipes, inoperable heating facilities, burned

electrical outlets, and missing or inoperable fire detectors. Bardell did not reject the calculations performed by Selah Consulting Engineer Mike Heit as showing that all units lacked needed load bearing structural members. He did not deny the infestation of insects. Therefore, we conclude that Bardell's opinions are conclusory and do not create a question of fact.

Steve and Janet Owens highlight that existing tenants raised no concerns regarding the condition, cleanliness, or structural soundness of any of the apartments. They argue that, based on tenant declarations, the evidence indisputably establishes that any code violations did not unreasonably interfere with the enjoyment of the property. We wonder if some of the tenants testified to a lack of concern because they lack an understanding of their exposure to harm. Regardless, a tenant's concern or lack of concern does not control whether a nuisance exists.

Steve and Janet Owens contend that the city of Selah must establish the presence of a public nuisance and that an issue of fact exists as to whether a public nuisance exists because the city failed to show that the nuisance affects equally the rights of an entire community or neighborhood. RCW 7.48.130 defines a public nuisance:

> A public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal.

Few Washington cases discuss this statute. Nevertheless, in *Kitsap County v. Kev, Inc.*, 106 Wn.2d 135, 139, 720 P.2d 818 (1986), our high court stated that "[a]lmost daily

39

violations of controlled substance and prostitution laws is activity that violates the comfort, repose, health, or safety of others, and can clearly affect an entire neighborhood or community." Although not directly analogous to the facts present at 519 South First Street, we similarly determine that the continued existence of the violations at the units threaten the health and safety of tenants and others within the community.

Finally, Steve and Janet Owens contend that the city of Selah failed to establish the elements required for injunctive relief. The Owenses argue that no immediate invasion of the city's right to enforce its ordinance existed. Rather, the city prevented the commencement of repairs by issuing a stop work order and did not issue permits during the pending lawsuit. They also argue, based on tenant declarations of happiness, that the code violations caused no, let alone substantial, injury. Selah responds that it is empowered by state law and its municipal code to gain injunctive relief. It also asserts that the record demonstrates that the tenants at the property faced risk.

Steve and Janet Owens focus on the elements generally required for issuance of an injunction. In order to obtain injunctive relief a party must typically establish the following:

> (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the act complained of will result in actual and substantial injury.

*SEIU Healthcare 775NW v. Department of Social and Health Services*, 193 Wn. App. 377, 393, 377 P.3d 214 (2016). Nevertheless, the Selah Municipal Code provides for

injunctive relief under the facts unearthed by the city regardless of satisfaction of the

three elements.  SMC 6.58.280 reads, in relevant part:

> The city may seek to enforce the provisions of this chapter, enjoin or abate any nuisance identified in this chapter, and impose monetary penalties against agents or property owners maintaining nuisances identified in this chapter consistent with Chapter 6.75 of this code, Code Enforcement.

In turn, SMC 6.75.100(b) declares:

> The code enforcement officer may seek legal or equitable relief to enjoin any acts or practices and abate any condition that constitutes or will constitute a violation of this code.  In the event the city must obtain an injunction or must obtain an order of abatement or must conduct an abatement, the responsible party shall be assessed the costs associated with such actions, including reasonable attorney's fees.  Those costs shall become a lien against the property that is the subject of the code enforcement action. The remedies provided in this chapter are cumulative and shall be in addition to any other remedy provided by law.

Two Washington statutes also authorize Selah to seek injunctive relief to abate a

nuisance.  RCW 7.48.200 provides:

> The remedies against a public nuisance are: Indictment or information, a civil action, or abatement.

RCW 7.48.220 declares:

> A public nuisance may be abated by any public body or officer authorized thereto by law.

RCW 7.48.250 and .260 also authorize the court to order abatement of a public nuisance.

In *City of Mercer Island v. Steinmann*, 9 Wn. App. 479, 485, 513 P.3d 80 (1973),

this court enforced the city's code provision that afforded the city the remedy of an

injunction for a code violation.  *King County ex rel. Sowers v. Chisman*, 33 Wn. App.

809, 818, 658 P.2d 1256 (1983) had a similar outcome.  The court noted that violation of

a statute does not necessarily inflict injury sufficient to warrant an injunction.

Nevertheless, the court should still grant injunctive relief if the ordinance provides for

injunctions against violations of its provisions.  This court concluded:

> This indicates a decision by the legislative body that the regulated
> behavior warrants enjoining, and that the violation itself is an injury to the
> community.  It is not the court's role to interfere with this legislative
> decision.

*King County ex rel. Sowers v. Chisman*, 33 Wn. App. at 818-19.

Steve and Janet Owens contend that, because LUPA provides an adequate remedy

and because the city of Selah abandoned its administrative process, an injunction is not

warranted.  Because of our earlier analysis with regard to these two contentions, we

disagree.

We share Steve and Janet Owens' concern for the availability of low income

housing for the population of the Yakima Valley.  Nevertheless, all residents of

Washington housing deserve safe housing.

CONCLUSION

We affirm the trial court's summary judgment ruling that a public nuisance exists

at 519 South First Street.  We affirm the trial court's grant of injunctive relief to the city

of Selah.

No. 36793-2-III
*City of Selah v. Owens*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

                                                           _____
                                                   Fearing, J.

WE CONCUR:

_____
Korsmo, J.P.T[1]

_____
Siddoway, A.C.J.

_____

[1] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time argument was held on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.